### Robert Jameson *versus* John Balmer.

Though there may be a want of accuracy, or indeed a repugnance, in some part of the language of a deed of land, the intention of the parties is to be gathered from the whole language used.

Where the owner of a farm conveyed a portion thereof to A. J. and O. C. J., and afterwards conveyed the residue to A. J. and subsequently acquired the title conveyed by him to A. J. by both deeds, and then died; and his administrator made a sale of real estate, under a license from Court, for the payment of debts, describing in his deed the land conveyed as "being one half of the farm formerly conveyed by said deceased to A. J. and O. C. J."; *it was held,* that one half of the whole farm passed by the deed of the administrator.

Writ of entry, demanding fifteen acres of land in Camden. To prove title in himself, the demandant introduced the following deeds. Abraham Jones to Benjamin Jones, of the fifteen acres demanded in this suit; Benjamin Jones to Abraham Jones, conveying back the same fifteen acres; Abraham Jones to Oliver C. Jones and Abraham Jones, Jr.; and Abraham Jones to Abraham Jones, Jr. Abraham Jones, Jr. was a son of Abraham Jones, Sen., and died unmarried and without issue before the death of his father. Polly Jones, administratrix of the estate of Abraham Jones, Sen., obtained license, and made sale of the real estate for the payment of debts, and made a deed thereof to the highest bidder, Abel Walker, whose title the demandant has. The widow of Benjamin

Jones, Sen. made application to have her dower assigned, and before the assignment was made, partition was made of the land held by her late husband as a tenant in *common*. The substance of these deeds and also of the assignment of dower, and partition, is stated in the opinion of the Court. The tenant introduced no evidence of title in himself.

SHEPLEY J., presiding at the trial, instructed the jury, that the demandant had by these deeds, and the proof, established a title in himself, unless they should find that Abraham Jones, Sen. was at the time of his death disseized, the defendant offering no evidence of title.

If these instructions were erroneous, the verdict, which was for the demandant, was to be set aside.

*Thayer*, for the defendant, contended that the deed from the administratrix of Abraham Jones, Sen. to Walker, under whom the demandant claimed, was void for uncertainty, and that therefore nothing passed by it.

But if any thing passed by it, it *was the undivided share* which was holden by the intestate, as tenant in common with O. C. Jones, of which the land now claimed is no part. The lot demanded is excluded by the description in the deed.

By the terms of the original deed to B. Jones, he could make no conveyance, nor could his heirs, during the lifetime of his father, and therefore it came to those who were his heirs at law after his father's decease, and of course, it was not subject to be sold to pay the debts of the father.

*H. C. Lowell* argued for the demandant, and contended that one half of lot No. 8, one half of the whole farm, was conveyed by the deed of the administratrix to Walker. The whole of the real estate of the intestate was intended to be conveyed.

It is the object of the law to uphold, rather then to defeat conveyances, though some portions of the description should be erroneous. *Wing* v. *Burgis*, 13 Maine R. 111 ; 4 Cruise's Dig. 405 ; *Bridge* v. *Wellington*, 1 Mass. R. 227. And if there be any uncertainty or ambiguity as to that intention, the

words of the deed shall be taken as the grantor's words, and the deed is to be construed most strongly against him, and in favor of the grantee. *Tufts* v. *Cutler*, 3 Pick. 272; Hill. Abr. 335. The whole description should be taken together, in giving a construction to a deed. *Vose* v. *Handy*, 2 Greenl. 322; *Worthington* v. *Hylyer*, 4 Mass. R. 196. The word *farm*, when used in a deed, has a legal and technical meaning, and includes all the lands in any way connected, or at any time used therewith. *Keith* v. *Reynolds*, 3 Greenl. 393; *Cate* v. *Thayer*, ib. 71; Hill. Abr. 347. Where one who has held his *farm* by several deeds of separate parcels, made by the same grantor at different times, makes his own deed to a third person, using language sufficiently indicating the whole farm, and then adding that the premises are the same which he purchased by deed of a particular date, and referring to one only of his title deeds, the whole farm shall pass by his conveyance. *Drinkwater* v. *Sawyer*, 7 Greenl. 366; *Willard* v. *Moulton*, 4 Greenl. 14; *Child* v. *Fickett*, ib. 471. The intestate in his lifetime had conveyed to his sons, Oliver C. and Abraham Jones, Jr. by two deeds, his whole farm; and the demandant is entitled to recover one half of that farm.

The opinion of the Court was by

EMERY J. — The propriety of the Judge's instruction to the jury in the present case, it is said, is to be determined by the construction which should be given to the deeds which are made part of the case.

We must understand by the verdict that Abraham Jones, at the time of his death, was seized of the land afterward conveyed by Polly Jones, adm'x of his estate, to Abel Walker, and that the defendant offered no evidence of title.

Though there may be a want of accuracy, or indeed a repugnance in some parts of the language of a deed, we must gather the intention of the parties from the whole descriptive language used. *Keith* v. *Reynolds*, 3 Greenl. 393. On the 14th day of October, 1809, Abraham Jones, for $150, conveyed to Benjamin Jones, on condition that said Benjamin is not to sell or

convey the premises or any part thereof to any person or persons during the natural life of said Abraham, "a tract of land in Camden, beginning at the southwesterly corner of lot No. 8 in Fales' survey of Camden, and running easterly by land of Josiah Gregory to the largest brook, thence upon an angle right across said lot till it makes fifteen acres upon the southwesterly corner of said lot No. 8."

On the 5th of September, 1815, said Abraham Jones, in consideration of a bond signed by Oliver C. Jones and Abraham Jones, Jr. conditioned for the support of himself and his wife, Mary Jones, during the life of each of them, and ten dollars paid by his said sons Oliver C. Jones and Abraham Jones, Jr. quitclaimed to them, their heirs and assigns, "a certain lot of land lying in Camden, excepting therefrom six acres and twenty rods of land deeded to Mr. McLoon and now in possession of James Paul, and fifteen acres deeded to my son, Benjamin Jones, said lot of land, being the farm on which I now live." "Also one other lot of land lying in Camden, aforesaid being lot No. 9, in the first division of land in said Camden, and the same lot of land which I purchased of James Paul in February last, subject to and reserving the right which said Paul has of redeeming said lot numbered nine, according to the verbal agreement made between me and the said Paul at the time I purchased the same of him."

On the first day of January, 1818, Benjamin Jones re-conveyed to Abraham Jones the fifteen acres which had been conveyed to said Benjamin on the 14th of October, 1809. On the 19th of October, 1818, said Abraham, senior, conveyed to said Abraham, Jr. the same fifteen acres, in fee. But his said son, Abraham, Jr. in the lifetime of his father Abraham, died without issue. By that event, the father became entitled to all the estate which belonged to Abraham, Jr. and was tenant in common with Oliver C. Jones of the estate conveyed to him and Abraham, Jr. on the 5th of September, 1815, and sole owner of the 15 acres which had been excepted from the conveyance to the two sons in the deed of the fifth of September, 1815.

After old Abraham's death, his wife, by a warrant from the Judge of Probate, dated June 8, 1825, had her dower in her husband's estate set off to her by three discreet and disinterested freeholders on the tenth of November, 1825. These commissioners after dividing property holden in common with Oliver C. Jones, a part of lot No 8, viz. about 85 acres thereof, and setting off to him a piece of land on the northwesterly side of the road and on the north-easterly side of said lot, 18 rods in width, and from said road to the northwesterly end of said lot, and setting off to said Jones on the northwesterly side of said road, and on the northeasterly side of said lot a piece of land, with a house thereon, 23 rods in width, and to run from said road to the shore, and from the remaining part of said tract of land, set off to the said Polly Jones, the widow named in the commission, one equal third part of the same in value, which said third part is described as follows: beginning at a stake and stones on the southeasterly side of the county road at land of David Clough, thence southeasterly by said Clough's land 100 rods to a stake and stones, thence northeasterly 15 rods to a stake and stones, thence northwesterly in a line parallel with the line first mentioned about 105 rods to a stake and stones at the road aforesaid, thence southwesterly by said road to the bounds first mentioned, and containing nine and one half acres, which said $9\frac{1}{2}$ acres were considered by the commissioners to be one equal third part in value of all the real estate shown to them of said Abraham Jones deceased and subject to dower.

This assignment of dower was allowed and accepted by the Judge of probate, at a court of probate on the eighteenth of January, 1826.

The said Polly Jones, Adm'x, afterward having obtained license to sell and convey the real estate of said deceased Abraham Jones, to the amount of two hundred and sixteen dollars, on the 22d day of December, 1827, sold and conveyed to Abel Walker, for one hundred and ninety-one dollars, he being the highest bidder therefor, the estate "being one half of the farm formerly conveyed by said deceased to Abraham

Jones and Oliver C. Jones; the half hereby conveyed is bounded on the west by land of David Clough, by land of the heirs of said Oliver on the east, and southerly by the sea shore, reserving the widow's dower."

These recitals present the situation of the parties, and of the property in controversy. And from the whole, we may justly deduce the conclusion that the tract in question was sold to Walker, from whom it is understood that the plaintiff derives his title.

It is objected, that the deed of the administratrix is void for uncertainty in its boundaries. There might possibly be some ground for this objection, if the boundaries of the farm were incapable of being ascertained. We are not apprised that difficulties are pretended on that subject. If so, it is very clear that the half of it is equally susceptible of being found. And by the terms of the deed to Walker, we are satisfied, that according to the cases, *Cate* v. *Thayer*, 3 Greenl. 71, *Keith* v. *Reynolds*, 3 Greenl. 393, *Willard & al.* v. *Moulton*, 4 Greenl. 14, *Child & ux.* v. *Ficket*, 4 Greenl. 471, and *Drinkwater* v. *Sawyer*, 7 Greenl. 366, we cannot decide otherwise than that, by the deeds and proofs, the plaintiff has established a title in himself to the premises demanded.

*Judgment must therefore be entered on the verdict.*