# COUNTY OF WASHINGTON.

THOMAS L. HAMILTON *versus* EDMUND FOSTER.

Monuments, referred to in a deed, must, generally, prevail over the courses and distances; but where there is such a wide departure from the courses and distances laid down, that some of the monuments are evidently erroneous, or conflict with each other, some elements in the description may be discarded or essentially modified, if, from all the facts, it appears that such construction is necessary to effect the manifest intent of the parties.

WRIT OF ENTRY. Plea, general issue. This case was taken from the jury, and, on Report of HATHAWAY, J., submitted to the whole Court, to render judgment by nonsuit or default, according to the legal rights of the parties.

The only questions in the case were, as to the location of boundaries of land, described in the deed introduced. The facts, as reported by the Judge, points of law and rules of construction adopted, will appear from the opinion of the Court, in connection with the following plan : —

Hamilton *v.* Foster.

LOT No. 3.

Kelley & Clark lot.

A B C D, land in dispute.

Foster's buildings.

E. Munroe's corner.

Scott's land.

*J. Granger* argued for demandant, and cited *Otis* v. *Moulton*, 20 Maine, 205; *Cutts* v. *King*, 5 Greenl. 482; *Heaton* v. *Hodges*, 14 Maine, 66; *Loring* v. *Austin*, 8 Greenl. 61; *Wing* v. *Burgess*, 13 Maine, 111; *Vose* v. *Handy*, 2 Greenl. 322; *Hale* v. *Foster*, 7 Vermt. 100; *Jackson* v. *Marsh*, 6 Conn. 281; *Morse* v. *Griffin*, 20 Maine, 425; 7 Johnson, 217; 3 Wend. 636; 8 Johnson, 406; 4 Mass. 196; 3 Johnson, 375 and 378; 22 Maine, 350; *Frost* v. *Spaulding*, 19 Pick. 445; *White* v. *Gay*, 9 N. H. 126; 1 Met. 450 and 455; 22 Pick. 416; 10 N. H. 305; 34 Maine, 25; 11 Johnson, 191; 29 Maine, 169; 35 Maine, 64.

*E. B. Harvey* argued for the tenant, and cited *Purrington* v. *Sedgely*, 4 Greenl. 283; *Cutts* v. *King*, 5 Greenl. 483; *Cambridge* v. *Lexington*, 17 Pick. 222; *Bussey* v. *Grant*, 20 Maine, 281; 8 Greenl. 61; 23 Maine, 217; 4 Ken. & Mumf. 125; 17 Mass. 125 and 207; 16 Pick. 385; 1 Met. 378.

The opinion of the Court was drawn up by

TENNEY, C. J.—The writ and the evidence refer to a parcel of land lying in the town of Calais, not far from the village of Milltown. It is bounded on the westerly side by the county road, which, at that place, is represented to be upon a course north 19° east. This parcel of land was, many years ago, divided into four lots, by B. R. Jones, who made a plan thereof, and numbered the lots, beginning on the northerly side, one, two, three and four. The part of lot No. 2 which adjoins the county road, to the extent of 150 feet upon the northerly line of lot No. 3, was formerly owned or occupied by N. H. Mooney, and the portion in the rear, so far as it becomes material to the present inquiry, was owned and occupied by Ebenezer Redding, a part of which, as it seems from the plan and deeds, was afterwards owned by Darling and Todd and McAllister. Lot No. 3 has been called the Nevins lot, and lot No. 4 was owned by Edmund Munroe. The northerly and southerly lines of lot No. 3, are parallel with each other. The eastern end of the same lot, so far as it is presented to us in this case, is the western boundary of land

of Levi Scott, and is at right angles with the side lines of lot No. 3. The western end of lot No. 3 is the line of the county road, and makes, with the northerly line of said lot, an acute angle many degrees less than a right angle.

The premises in the writ are described as bounded substantially as follows:—" Beginning at a point on the southerly line of lot No. 2, distant five rods from the north-westerly corner of Levi Scott's lot, in a north-westerly direction,— thence running in a south-westerly direction, at right angles with the said side line of lot No. 2, to a point two rods northerly of the side line of lot No. 4,—thence running northerly, by land formerly owned by Samuel Kelley, (called the Clark lot,) to the north-easterly corner thereof,—thence northerly to the southerly side line of lot No. 2, in a line at right angles therewith,— thence, on the last named line, easterly to the bound first mentioned.

The case finds that the occupancy of the land has been according to the dotted pencil line on the south-east side of the " barn," as located on the plan, and that the plaintiff has maintained a fence on that line, since he took possession under his deed, which was fifteen or sixteen years before the trial in April, 1856, and that the line has been in dispute seven or eight years; that the tenant pointed out to the surveyor the corner, marked on the plan " corner of fence," and said he supposed that to be the corner, and that he had occupied up to the line running south-westerly from said corner, but said the line had been disputed. No question was made that the line from this corner, at right angles with the southern line of lot No. 2, would strike the northern line of lot No. 4, at the distance of two rods from the corner referred to.

The oldest deed in the case is from Benjamin F. Barker to Samuel Kelley, dated October 24, 1833, and describes the land therein conveyed as " beginning on said county road, two rods from the north corner of lot No. 4; thence running on said road, northerly, four rods; thence running by a line, parallel with the said line of lot No. 4, easterly, eight rods; thence by a line parallel with said county road, westerly, four

rods, to the two rods reserved for a road; thence, by a line parallel with said side line of lot No. 4, eight rods, to the first mentioned bounds, meaning to convey thirty two square rods, the two rods of land aforesaid, between the lot herein conveyed and the lot owned by Edmund Munroe, is reserved by me for a road."

It is conceded, in argument, that the residue of the lot No. 3, westerly of the line, from the "corner of the fence" to the northerly line of lot No. 4, including houses and other buildings respectively, marked "Hamilton" and "Foster" on the plan, was conveyed in a deed from Barker to Emerson, dated January 29, 1835. And it appears that Emerson conveyed to Joseph Dearth the same land on February 9, 1836, and at the same time took back a mortgage thereof from Dearth, and that Dearth, on June 2, 1836, conveyed therefrom that portion, which is hereinafter described, to Pitman and Carlton, and, on January 28, 1840, Emerson conveyed to the demandant, and Samuel Hamilton, the whole of the land conveyed to him, before his deed to Dearth, excepting the part thereof which Dearth had conveyed to Pitman and Carlton, the title conveyed by Emerson to Dearth having reverted, and become forfeited in the former, under the mortgage of the latter, and the foreclosure of the same. On June 16, 1845, Samuel Hamilton released to the demandant all his interest in the land which they derived from Emerson.

The great question in the case is the true location upon the earth of the western boundary of the land conveyed by Dearth to Pitman and Carlton. The language used in the description of the land, attempted to be conveyed by this deed, is as follows: "Beginning at the south-east corner of said lot, bounded by land of Edmund Munroe and Levi Scott; thence running westerly, five rods, to land of Joseph S. Clark; thence running northerly, by land of said Clark and Joseph Dearth, ten rods, to land of Samuel Darling, Jr., and Todd and McAllister; thence running on a line of said Darling, Jr.'s, land, and Todd and McAllister's land, easterly, supposed to be five rods, to land of Levi Scott; thence running southerly, on a line of

Scott's land, ten rods, to the first mentioned bounds, containing fifty square rods, more or less."

The corner at which the description in the deed last referred to commences, the counsel for the parties agree in argument, is at the intersection of the westerly line of Scott's land, with the northerly line of lot No. 4. This is obviously correct.

The first line in the description in this deed, from the corner last referred to, will terminate at some point on the easterly line of the Clark lot, which, by the deed to Kelley, is four rods in length, and which point is left uncertain. This line will be more than five rods in extent, if its termination should be at the nearest point which can be reached, and will leave a parcel of land, not conveyed by the deed, lying upon the northerly line of lot No. 4, not exceeding two rods in width at the western end, and running to a point at the other, and of more than four rods in length. The second line, is on the easterly line of the Clark lot, extending four rods, if commenced at the most eastern extremity thereof, and the direction beyond the Clark lot is uncertain. It is uncertain, because it is to proceed upon the line of Clark and Dearth, when Clark has at this place no land, and the line of Dearth's land was the one which was to be fixed by the very deed. But it is to strike the land of Darling and Todd and McAllister, which is to be treated as a monument. If run so as to strike this monument, it makes a large angle at the northeasterly corner of the Clark lot, making two lines in that which is represented as one, and the length of both is very much increased beyond the distance of ten rods. If this second line in the description should be continued on the same course as that of the eastern line of the Clark lot, so as to make but one line, it would strike far to the westward of the land of Darling and of Todd and McAllister, upon the land of N. H. Mooney, which is not referred to in the deed.

The third line in the description is represented therein as being wholly on the land of Darling, and of Todd and McAllister, and supposed to be five rods in length; whereas, on

the hypothesis that the second line is wholly on the east line of Clark, and continued in the same direction, the third line must be in part upon two other proprietors, and extending nearly twice the distance of that represented in the deed.

On the other hand, the ground taken by the demandant in giving a construction to this deed is met with difficulties. If the first line in the description is coincident with the northerly line of lot No. 4, it can never reach the Clark lot or come within nearly two rods thereof, as it is described in the deed of the same to Kelley. And, if this difficulty could be overcome, so far that the Clark lot could be reached by the first line, the second line is that of Clark and Dearth's land, which diverges much from a line at right angles with the northerly line of lot No. 4, so that a new departure from the north-easterly corner of the Clark lot, on a line to strike the land of Darling, and Todd and McAllister, would be the introduction of a new line, and would cause a derangement in the distances laid down in the deed, as well as lead to a result inconsistent with that contended for by both parties.

These difficulties in the way of the demandant's claim, are attempted to be avoided on the ground that rights have been obtained by disseizin, so that the first line of the description will be coincident with the northerly line of lot No. 4, and will meet the Clark lot, and thence the second line will pass northerly to the southerly line of lot No. 2, at a distance of five rods from the "corner of the fence," and will strike the monument of Darling and others' line, as named in the deed. There is not such evidence of disseizin, as to give to either party the means of placing their respective claims on different grounds from those exhibited by the deeds, and other facts in the case.

If the variations, referred to, were only in distances, or courses and distances, and monuments referred to could be reached without doing violence to other parts of the description, the latter, by a well established principle of law, must prevail. But when there is such a wide departure from distances laid down, and lines terminate at monuments not re-

ferred to, and are coincident with those foreign to the description, and those named abandoned, a suspicion that the hypothesis of each party is erroneous may well be entertained, provided no other mode can be found, consistent with legal principles, which lead to reasonable results.

Under such a state of things, as is presented in this case, it is proper that all the evidence should be examined together, as well as each part separately; and it is not in violation of well established rules of construction, that some elements in the description may be found erroneous, so that the same should be discarded or essentially modified. This proposition is fully supported by authorities cited for the demandant. But this cannot be done arbitrarily, but must be founded upon facts in the case, that such was according to the intent of the parties. The word " and" has been construed to mean "or;" the direction of a line has been held to be its opposite in the design of the parties.

If the parcel of land conveyed to Kelley by Barker was a parallelogram, having its corners right angles, and it extended to the northerly line of lot No. 4, the great difficulty in the case would be wanting, and the demandant would be entitled to recover for the larger part, at least, of his claim.

Good reasons are found in the case for believing that the parties to the deed from Barker to Kelley did not know that the angles of the parcel, described at the county road, were not right angles, or, if they did know it, it was not brought to their attention. The side lines and the end lines were parallel with each other respectively, the former were precisely eight rods in length, and the latter were four rods. But the actual width of this parcel was much less than four rods, and could not contain an area of thirty-two square rods, which, it is clear from the deed, it was one important object of the grantor to convey and of the grantee to receive.

The deed of Dearth to Pitman and Carlton seems to treat the Clark lot as coming to the northerly line of lot No. 4. This is manifest from the fact, that the line from the place of beginning is represented as five rods long, and as terminated

at the Clark lot. As we have seen, this could not be upon any other line than that of lot No. 4, on its northerly side. From the termination of this line, the second line runs ten rods, which is the width of the whole of lot No. 3, and is represented as terminating on land of Darling and others, five rods from land of Levi Scott.

It is true, that in determining the quantity of land, and its boundaries, excepted in the deed from Emerson to the demandant and Samuel Hamilton, the same rule of construction must be adopted, which would have applied if the question had arisen between Dearth and Pitman and Carlton, where both were interested in the title. But if Pitman and Carlton, at that time, had contended that their title extended over the parcel claimed by the tenant in this case, would it not be unjust or illegal, that, if both parties to that conveyance had treated the Clark lot as bounded southerly on lot No. 4 in the deed, upon discovery of the common error, the grantees in that deed should so materially change three of the four lines of the parcel, and thereby include a much greater quantity of land then that contemplated, or which is represented in the deed? It is manifest that only one answer can be given to this question.

In examining the deed to Pitman and Carlton, it is certain that, on no construction can all the calls therein be answered, consistently with the literal import of the description of each line taken separately. It is not, then, a case where monuments cannot be found, but where they cannot be reconciled one with another. And, if no mode could be found to ascertain the intention of the parties, as disclosed by monuments, it is a case analogous to one, where monuments fail. In such a state of things, courses and distances are to govern.

The northerly and easterly lines referred to in this deed, as to their direction, are not in dispute. All the lines, as to length, are stated with exactness, excepting the third, qualified by the terms *supposed to be* five rods. But it does not appear that this was erroneous, unless the line on other grounds should extend to a much greater distance. The course of the

first and second lines, we are satisfied from the evidence, was intended by the parties to run, as they would have done, if the Clark lot was really a parallelogram, with right angles at the corners, and that it was bounded on the northerly line of lot No. 4. By the correction of these errors, which actually existed in the minds of the parties to the deed, the monuments will harmonize with the courses and distances very nearly, and the demandant should prevail.

But, as it appears from the plan that the southern line, as claimed by the demandant to be the southern boundary of the land conveyed to Pitman and Carlton, is two feet longer than is authorized by the deed, the eastern boundary of his land must be a line extended from a point five rods distant from the "corner of the fence," to a point in the northern line of Munroe's land, at the same distance from the intersection of his and Scott's line. The demandant can recover no land southerly of a line parallel with Munroe's northern line, and two rods distant therefrom, his claim in his writ being limited thereto. *Tenant defaulted.*

APPLETON, MAY and GOODENOW, J. J., concurred.

[NOTE.—This case was argued at July term, 1856, when the Court was held by five Justices only; but the opinion was not prepared until after HATHAWAY, J., had retired from the bench.]