Moses M. Chapman *vs.* Melvin Hamblet.

Cumberland. Opinion November 16, 1905.

*Deeds. Construction. Description of Land. · Monuments. Ambiguity. Intent of Parties. " Prolongation."*

1. The description of land conveyed is to be interpreted by reference to all the calls in the deed of conveyance, and every call is to be answered if it can consistently be done. .

2. In cases of ambiguity the interpretation is to be sought from the attendant circumstances and the intent of the parties, and the deed must receive a construction most favorable to the grantee.

3. A boundary line is a monument and would by the general rule of construction govern the course in a deed, unless the intention of the parties would be defeated by its adoption.

4. Where uncertainty is introduced in the language of a deed by the word " prolongation," it is held to mean a continued or extended line, though consisting of several angles, where such meaning would be consistent with the other words of description, rather than a direct line which would render the next course in the deed inconsistent with the direction and monuments by which it is described.

On report. Judgment for defendant.

Trespass quare clausum fregit wherein the plaintiff sought to recover damages of the defendant for cutting and removing certain wood and timber from a portion of the plaintiff's premises in Scarborough. The defendant admitted the taking but justified under claim that the premises upon which the alleged trespass was committed were a part of a tract of land on which the trees and wood growth had been conveyed to him by the plaintiff. The action was brought in the Superior Court, Cumberland County. Plea, the general issue. Tried at the February term, 1905, of said court. After the evidence had been closed, it was agreed to report the case to the Law Court and that upon so much of the evidence "as is competent and legally. admissible, the Law Court is to render such judgment as the legal rights of the parties may require."`

All the facts, so far as material, are stated in the opinion.

The deed mentioned in the opinion and given by the plaintiff to the defendant, is as follows:

"Know all men by these presents, that I, Moses M. Chapman of Westbrook in the County of Cumberland and State of Maine, in consideration of one dollar, and other good and valuable considerations, paid by Melville Hamblet of Portland in said County, the receipt whereof I do hereby acknowledge, do hereby remise, release, bargain, sell and convey, and forever quit-claim unto the said Melville Hamblet, his heirs and assigns forever, the trees and wood growth on the following described parcel of land situated in Scarborough in said County of Cumberland, bounded and described as follows:

Commencing at a point on the County road running from Portland to Buxton, at the corner of Allen T. Reed's land and land of said Chapman; thence following the division line between said Allen T. Reed's and said Chapman's and the prolongation of said Chapman's line until it intersects with the wire fence between said Chapman's land and the land now or formerly of Champaign and Larochelle; thence in an easterly direction by said wire fence between said Champaign land and the land of said Chapman, and by the prolongation of said Chapman's said line, to land now or formerly of McKenney; thence by land of said McKenney and Knight to a logging road; thence by the logging road to a wire fence on said Chapman's land; thence by the wire fence to said Buxton road; reserving and excepting therefrom a small lot of birches near the Buxton road. Provided the said trees and wood growth shall be removed within three years from the date thereof.

Said grantee has the right to pile said wood and timber in the pasture of said Chapman, together with all reasonable rights of way in and to the same, and to said above described premises, for the purpose of removing said trees and wood,—as herein provided.

To have and to hold the same, together with all the privileges and appurtenances thereunto belonging to the said Melville Hamblet, his heirs and assigns forever.

And I do covenant with the said Grantee, his heirs and assigns, that I will warrant and forever defend the premises to him the said Grantee, his heirs and assigns forever, against the lawful claims and demands of all persons claiming by, through or under me.

In witness whereof, I the said Moses M. Chapman, have hereunto

set my hand and seal this eleventh day of November in the year of our Lord one thousand nine hundred and three.

MOSES M. CHAPMAN (L. S.)

Signed, Sealed and Delivered
         in Presence of
            ISAAC W. DYER.

STATE OF MAINE, ss.          Portland, November 11th, 1903.

. Personally appeared the above named Moses M. Chapman and acknowledged the above instrument to be his free act and deed.

Before me,

ISAAC W. DYER,

Justice of the Peace."

# SKILLIN PLAN.

*A. F. Moulton and William Lyons*, for plaintiff.

*M. P. Frank*, for defendant.

SITTING: EMERY, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

PEABODY, J.   This was an action of trespass quare clausum.   The case comes before the law court on report.   The act complained of was the cutting of certain wood and timber from a portion of the plaintiff's farm.

The defendant claims that under the deed of the plaintiff dated November 11, A. D. 1903, he had license to cut all the wood and timber upon the farm except a small lot of birches on another part of the premises not effected by the acts complained of.

The dispute is upon the construction of this deed and especially of the following words in the description of the boundary of the disputed territory: "Commencing at a point on the County Road running from Portland to Buxton, at the corner of Allen T. Reed's land and land of said Chapman; thence following the division line between said Allen T. Reed's and said Chapman's and the prolongation of said Chapman line until it intersects with the wire fence between said Chapman's land and the land now or formerly of Champaign and Larochelle."

The survey and plan made by Augustus E. Skillin subsequent to the date of the deed show that the language describing the lines in dispute is ambiguous.   The uncertainty which exists is introduced by the word prolongation in connection with the first course of the Reed boundary line.   In common language this word may mean a line produced as claimed by the plaintiff, but it is not infrequently used of a continued or extended line as claimed by the defendant.

The plaintiff's contention is that by the language "prolongation of said Chapman's line", is meant a line produced in the first course of the Chapman-Reed boundary, and that of the defendant is that the word "prolongation" is used in the sense of extension or continuation and is a term merely descriptive of the boundary line beyond the land of Reed and to the Champaign-Larochelle wire fence.

Therefore it is necessary to choose between a line departing from the Chapman-Reed boundary line and one following it but in a new course.

The description of the land is to be interpreted by reference to all the calls in the deed, and every call is to be answered if it can be done. *Herrick* v. *Hopkins,* 23 Maine, 217. The interpretation is to be further sought from the attendant circumstances and the intent of the parties, and the deed must receive a construction most favorable to the grantee. *Erskine* v. *Moulton,* 66 Maine, 276; *Field* v. *Huston,* 21 Maine, 69; *Pike* v. *Monroe,* 36 Maine, 309; *Ames* v. *Hilton,* 70 Maine, 36; *Knowles* v. *Bean,* 87 Maine, 331 ; *Stoops* v. *Smith,* 100 Mass. 63; *Hastings* v. *Hastings,* 110 Mass. 280.

The Chapman-Reed boundary consists of a broken line of four courses and the Chapman line is continued on still another course. As this boundary line is a monument it would by the general rule of construction govern the course unless the intention of the parties would be defeated by its adoption. *Haynes* v. *Young,* 36 Maine, 557; *Sanborn* v. *Rice,* 129 Mass. 387; *Woodward* v. *Nims,* 130 Mass. 70; *Davis* v. *Rainsford,* 17 Mass. 210; *Percival* v. *Chase,* 182 Mass. 371. By following this boundary line until the end of the Reed land is reached without reference to the several angles in the line, and then following the Chapman line understanding it to be still used as a monument until the Champaign wire fence is reached, there is no confusion in the language of the deed. It will be seen by reference to the Skillin plan that the line which the plaintiff insists answers the second call in the deed introduces into the description two material inaccuracies; it does not intersect " with the wire fence between Chapman's land and land now or formerly of Champaign and Larochelle"; and the next course is inconsistent with the direction and monuments by which it is described.

. The force of the argument that the word prolongation in the description implies a direct line is lessened by the use of the word a second time in the deed, namely, "thence in an easterly direction by said wire fence between said Champaign land and the land of said Chapman and by the prolongation of said Chapman's said line to land now or formerly of McKenney," where it could not in the

·nature of the case be a direct line; and the course and the names of the adjacent owners in this call of the deed best accord with the boundaries of the land claimed by the defendant.

The defendant's testimony shows that he had in view the purchase of the wood and timber upon the ·whole of the plaintiff's farm except a small lot of birches which the plaintiff desired to reserve for fencing, that the price which he offered was for this and that no reduction was ever made in the price.   This is in conflict with the plaintiff's statement that the intended reservation was the wood and timber on the lot in dispute made definite by a line which he pointed out to the defendant extending south across his land being that designated in the second call in the deed.   It appears that the plaintiff during the negotiation requested Lewis P. Knight, who was familiar with the value of wood and timber, to estimate the amount of growth on the premises, and that he in making his estimate examined the whole tract understanding that the plaintiff was to sell all the wood and timber except some small growth of birches.   The greater weight of evidence proves that the plaintiff did not as he testifies point out this line to the defendant, but an assumed division line between his land and that of John O. Knight which he marked upon the face of the earth by spotting trees between a spruce tree near the Reed line and a fir tree near the corner of the adjoining lands of Champaign and Lowe.

Under these circumstances and rules governing the construction of deeds it must be held that the deed between the parties included the disputed premises.

*Judgment for defendant.*