## E. DANA PERKINS *vs.* NEHEMIAH P. M. JACOBS

### (2 cases)

### York.    Opinion May 8, 1925.

*When a plan is referred to as a part of the description in a deed, such plan is made a material and essential part of the conveyance with the same force and effect as if copied into the deed, and is subject to no other explanations by extraneous evidence than if all the particulars of the description had been actually inserted in the body of the grant or deed.*

*Want of record of the plan makes no difference; it is sufficient to prove the plan and its contents.* •

*It is well settled that what are the boundaries of land conveyed by a deed, is a question of law: where the boundaries are, is a question of fact.    An existing line of an adjoining tract may as well be a monument as any other object.*

*When one accepts a deed bounding him by another's land, the land referred to becomes a monument which will control distances.*

In the instant cases the Easterly line of lot twenty-four, owned by the plaintiff, on the plan referred to in the title deeds of both parties is the defendant's Westerly monument or boundary, as the plaintiff rightly contends; beyond that line the defendant cannot go Westerly.

The question of fact presented by the record is, *where* on the face of the earth is that line as shown on the plan, being the boundary or monument between the lands of the parties.

In deciding this question of fact, the case being presented on report, the court exercises the functions of a jury.

A careful examination of the undisputed testimony of the surveyor who made the plan leads to but one conclusion—that the Easterly line of lot twenty-four as shown on the plan referred to, which is the boundary or monument between the lands of the parties, is a prolongation Southerly of the line of a fence which marked the Westerly boundary of the "schoolhouse lot," so called, when the plan was made, and the land in dispute is within the boundaries of defendant's deed.

Whether the shortage caused by overestimating, in making the plan, the amount of land West of the defendant's lot, is to be shared between the plaintiff and the owner of the lots adjoining his lots on the West, the court has no occasion now to determine; it cannot be imposed upon the defendant in disregard of the Easterly and Westerly boundaries of his lot.

On report.    Two actions, one a real action to determine the location of the divisional line between two adjoining lots, one of which is owned

by plaintiff and the other by defendant, and the second action is an action of trespass quare clausum fregit. Both parties claim under warranty deeds given by the same grantors. A certain plan was referred to in each deed and made a part of the description in each. In the first action the general issue was pleaded and under a brief statement a disclaimer was filed. In the second action the general issue was pleaded. At the conclusion of the evidence by agreement of the parties the cases were reported to the Law Court. Judgment for the defendant in each case.

The opinion fully states both cases.

*E. P. Spinney*, for plaintiff.

*Robert B. Seidel*, for defendant.

SITTING: CORNISH, C. J., PHILBROOK, MORRILL, WILSON, STURGIS, BARNES, JJ.

MORRILL, J. The first case is a real action; the second is an action of trespass quare clausum fregit. The parties own adjoining lots in the Village of Ogunquit, in the town of Wells, the Easterly line of plaintiff's lot being the Westerly line of defendant's property. As is usual in such cases, the location of that dividing line is in dispute, and by the pleadings the title to a lot of land 25.2 feet wide on a street and 101.96 feet deep on the disputed line, is in issue.

Both parties claim under warranty deeds from the same grantors, George H. Littlefield and Lester C. Littlefield, hereinafter for brevity referred to as "the Littlefields." The plaintiff's deed is dated October 27, 1919 and conveys

"Lots twenty two (22), twenty three (23) and twenty four (24) as shown upon Plan of Property of George H. Littlefield & Son in said Wells, in the Village of Ogunquit, so called, made by R. W. Libby, Eng. April 1913 which lots are bounded as follows, to wit: On the North for 210 feet by a Reserved Street; on the East for 101.96 feet by land of said Grantors; on the South by land of N. P. M. Jacobs; on the West for 97.64 feet by lot numbered twenty one."

The defendant's deed is dated October 22, 1921 and conveys

"A certain lot of land in said town of Wells, in the Village of Ogunquit, so called, the same as shown on a certain Plan made by R. W. Libby, April 1913 for said George H. Littlefield & Son and bounded on the North for 165 feet by a Reserved Street; on the East by Jacobs,

Weare et als; on the South for 165 feet, more or less by land of said Grantee; on the West for 101.96 feet by lot No. 24 now owned by E. Dana Perkins."

No question arises as to recording of the deeds, or as to the identity of the plan referred to in both deeds and made a part of the description in each deed. A blue-print copy of the original plan, which has been lost or destroyed, was introduced in evidence without question, and is made a part of the case. By reference as a part of the description in each deed, the plan is made a material and essential part of each conveyance with the same force and effect as if copied into each deed, and is subject to no other explanations by extraneous evidence than if all the particulars of the description had been actually inserted in the body of the grant or deed. *McElwee* v. *Mahlman*, 117 Maine, 402, 406. *Bradstreet* v. *Winter*, 119 Maine, 30, 38. *Erskine* v. *Moulton*, 66 Maine, 276, 280. Nor does it make any difference that the plan is not recorded; it is sufficient to prove the plan and its contents. *Danforth* v. *Bangor*, 85 Maine, 423, 428. In the instant case it is conceded that a blue-print copy of the plan was given to Mr. Perkins by the Littlefields when he bought his lots.

It is obvious upon reading the deeds that the defendant took title to all the land South of the Reserved Street mentioned in the deed, from land of Jacobs, Weare & als. on the East to lot No. 24 owned by the plaintiff on the West. The Easterly line of lot twenty-four is the defendant's Westerly monument or boundary; beyond that line he cannot go Westerly. The plaintiff so contends and is unquestionably right in that contention.

It has often been said that *what* are the boundaries of land conveyed by a deed, is a question of *law;* where the boundaries are, is a question of *fact.* An existing line of an adjoining tract may as well be a monument as any other object. *Abbott* v. *Abbott*, 51 Maine, 575, 581. *Murray* v. *Munsey*, 120 Maine, 148, 150. When one accepts a deed bounding him by another's land, the land referred to becomes a monument which will control distances. *Bryant* v. *Railroad Company*, 79 Maine, 312.

The Easterly line of lot twenty-four being the boundary or monument between the lands of the parties, the question of fact presented is *where* on the face of the earth is that line as shown on the plan. In deciding this question of fact, the case being here on report, we exercise the functions of a jury. A careful examination of the undisputed

testimony of the surveyor who made the plan, leads to but one conclusion,—that the Easterly line of lot twenty-four as shown on the plan is a prolongation Southerly of the line of a fence which marked the Westerly boundary of the "school house lot," so called, when the plan was made, and the land in dispute is within the boundaries of defendant's deed. The testimony leaves no doubt that the surveyor used that fence as a monument from which to plot the "school house lot," and the Easterly and Westerly lines of the lot later sold to the defendant. There is absolutely no evidence that the fence in question did not mark the Westerly boundary of the schoolhouse lot.

Examination of the record will demonstrate the correctness of this conclusion, and that the confusion has arisen solely through an error of the surveyor in marking on the plan the supposed width of the nine lots, including lot twenty-four, plotted Westerly of the lot later sold to the defendant.

By deed dated May 16, 1912 the Littlefields took title to a tract of land of which the lots of the parties are a part; this tract must at sometime have been carefully surveyed because it is described in the deed by courses, distances and bounds; on its South line, its Southeasterly corner was marked by a stone bound; another stone bound was at the Northeasterly corner adjoining land of Lincoln C. Littlefield, at the Northeasterly corner of lot twenty-seven as shown on the plan; iron hubs or posts marked other angles of the tract conveyed; these stone bounds, iron hubs and posts are mentioned in the deed.

In May, 1905 a former owner of the large tract had conveyed therefrom to the Town of Wells a rectangular lot one hundred sixty-five feet square, with a "right of way" twenty-five feet wide, along the Northerly side, leading to Main Street; the corners of this lot were described in the deed to the Town as marked by stones, and the courses of the lines were given. In the deed of May 16, 1912 this "school house lot" was carefully excluded and the bounds at the Southeasterly, Southwesterly and Northwesterly corners were given as bounds of the lot then conveyed; the length of the Southerly and Westerly sides was given as one hundred sixty-five feet each, and the description began at a point on the Northerly side of the right of way, opposite the Northwest corner of the schoolhouse lot. In the deed to the Littlefields an iron hub in the Easterly line of the School house lot, forty-nine and one half (49½) feet Northerly from the Southeasterly corner thereof is also given as a bound of the land conveyed.

These details so carefully observed in the deed of May 16, 1912 show conclusively that the location of the schoolhouse lot was clearly defined and marked on the face of the earth, and the iron hubs along the Northerly side of the tract North of the right of way, are located with reference to its Northwesterly corner.

In April of the following year, 1913, the Littlefields employed R. W. Libby to make a plan of their land and divide it into lots. At that time Mr. Libby ran two lines and made two measurements; he found a fence along the Westerly side of the schoolhouse lot; beginning at the Northerly end of that fence, on the Southerly line of the "right of way," he ran a line in a straight course Westerly to the post road to Portsmouth, and measured the distance; this gave him data for plotting the Northerly reserved street, called in the record School Street. He then began at the Southerly corner of the schoolhouse lot marked by the fence and ran the Northerly line of the Southerly reserved street in a direct course to the Portsmouth post road, without making the angle shown on the plan at the Westerly end, and measured the distance; this gave him data for plotting the Southerly reserved street; these streets are not parallel but converge as they run Westerly; this convergence necessarily makes an angle to the North in the Southerly reserved street at the Southerly corner of the schoolhouse lot.

With the data so obtained, and with the Littlefields' deed in his hands, Mr. Libby made in his office the plan in the case which is conceded to be the plan mentioned in all the deeds. It is obvious that without the Littlefields' deed he did not have sufficient data from which to make his plan. Before the plan was completed the Littlefields conveyed to one Mary A. Littlefield by deed dated April 11, 1913, the lot marked A on the plan. Mr. Libby located the corners of this lot and marked them with iron rods. The course of the Westerly end of the Southerly reserved street was accordingly changed by an angle to the North.

Upon examination of the plan it will be found to follow accurately the description of the deed of May 16, 1912 to the Littlefields, with two minor exceptions not material to this issue. The Easterly and Westerly lines of the schoolhouse lot were extended Southerly forming the lot later conveyed to the defendant, and Easterly of the latter lot an irregular lot is shown, which was conveyed to one Butler by deed dated July 31, 1915, referring to the plan and describing the Westerly

line as in "the same course as the line dividing the school house lot and said lot No. 27." A copy of the material portions of the plan is inserted below. In dividing the land between the Westerly line of the schoolhouse lot projected Southerly and lot A, into nine lots the surveyor erroneously marked the width of those lots on the reserved street as seventy (70) feet. No other survey was made until ten years later; in the meantime lots were sold with reference to the plan of April, 1913.

In the Fall of 1923 Mr. Libby for the first time made a survey of the lower tier of lots, but not of the Jacob's lot, and ran the Southerly line to the stone bound; he found the length of that line to be but four feet less than the distance stated in the Littlefields' deed which he had in his hands when he made the plan.   He then measured out the nine lots giving each the indicated width of seventy feet, with the result that the Easterly line of lot twenty-four (24) is carried twenty-five and two tenths (25.2) feet Easterly of the Westerly line of the schoolhouse lot projected Southerly; the Jacobs' lot is moved Easterly to make a corner at the stone bound, thus including in the Jacobs' lot the lot conveyed to Butler six years before Jacobs received his deed, and making the length of his lot one hundred and eighty feet, instead of about one hundred sixty-five feet; the schoolhouse lot instead of being a rectangle, 165 feet by 165 feet, is shown as an irregular quadrilateral with no two sides parallel, and the reserved street is widened at its Easterly end to nearly double its width as shown on the plan.

In explanation of these discrepancies it is suggested that the surveyor must have made a mistake in measuring one or the other of the lines from the schoolhouse fence to the post road, which he did not discover until 1922.   Even so, that error, if it existed, would not alter the location of the schoolhouse lot on the face of the earth; that was fixed by monuments, and the external lines of the tract, North of School Street, are fixed with reference to the Northwesterly corner. The discovery of this alleged mistake in measurement simply shows that there is actually less land than the surveyor supposed and plotted, betweeen the schoolhouse lot and the post road.   By adding the distances given on the plan, the adjoining lots thirteen and fifteen cannot be made to overlap the fixed boundaries of the schoolhouse lot.

The only error shown, affecting this issue, was in giving on the plan a width of seventy feet to each of the nine lots in the Southerly tier, or a total distance of 630 feet from lot A to the Easterly line of lot twenty-four, as shown on said plan.   This distance must yield to said Easterly line of lot twenty-four as a monument, (*Bryant* v. *Railroad Co.*, supra) the location of which on the face of the earth is fixed as in line with the fence on the Westerly line of the schoolhouse lot.

The cases of *Baldwin* v. *Shannon*, 43 N. J. L., 596, and *Barrett* v. *Perkins*, 113 Minn., 480, relied upon by plaintiff, are not applicable;

the lot of defendant is not a remnant, left after plotting the other lots; its bounds on the East and West were first fixed with reference to the bounds of the schoolhouse lot, and the shortage occurred, according to the explanation of the surveyor, in overestimating the amount of land West of defendant's lot. Whether that shortage is to be shared between the plaintiff, who owns six lots, and the owner of the other three, we have no occasion to determine here; it cannot be imposed upon the defendant in disregard of the Easterly and Westerly boundaries of his lot.

In both cases the entry must be

*Judgment for defendant.*

CORNISH, C. J., sat at argument and participated in consultation, but, owing to retirement, does not join in the opinion.