WILLIAM AND GRACE K. BREWSTER
*vs.*
FRANK M. CHURCHILL

Franklin. May 13, 1952.

*Berman & Berman,*
*Benjamin L. Berman,* for plaintiff.

*Currier C. Holman,* for defendant.

SITTING: MURCHIE, C. J. THAXTER, FELLOWS, WILLIAM-SON, NULTY, MERRILL.

MURCHIE, C. J. In this action of trespass, a referee, hearing the case with the right of exceptions on questions of law reserved, as authorized by Rule 42 of the Rules of Court, 129 Me. 519, filed a report awarding the plaintiffs a recovery of $1,900, applicable largely to hardwood and softwood timber which the defendant removed from land of the

plaintiffs under a claim of title thereto. Something was included, it is true, for damage caused to young growth and to the realty, in the course of the defendant's operation, but if he was the owner of the growth removed, those items would represent nothing more than an incident to a lawful woods operation. Defendant had title, as the grantee, direct or indirect, of parties to whom the plaintiffs had sold all the lumber of both species on a part of their land, to all he removed northerly of the southerly line described, identically, in the two deeds by which plaintiffs conveyed the same. The issue which must control the case is the location of that southerly line.

The line was described in said deeds as follows:

"Commencing at a stone wall at the roadside; thence easterly along said stone wall and continuing in an easterly direction to land now or formerly owned by Fred O. Smith."

The referee decided that, after following the course of the wall from the roadside to its easterly end, the line ran "due east" therefrom to the westerly line of the Smith property. That decision was one of law and not of fact. It has been said many times in this Court that:

"*What* are the boundaries of land conveyed by a deed, is a question of *law*. *Where* the boundaries are, is a question of *fact*. An *existing line* of an adjoining tract may as well be a *monument* as any other object. And the *identity* of a monument found upon the ground with one referred to in the deed, is always a question"

for the jury, i.e. one of fact. *Abbott* v. *Abbott*, 51 Me. 575, *Murray* v. *Munsey*, 120 Me. 148, 113 A. 36; *Perkins* v. *Jacobs*, 124 Me. 347, 129 A. 4. No question of identity is here involved. The issue is the location of the southerly boundary.

The defendant filed written objections to the report as required by Rule 21 of the Rules of Court, 129 Me. 511, to

lay the groundwork for prosecuting exceptions to its acceptance if such action was taken. This was the only procedure available to him to enforce his reserved right. *Camp Maqua Young Women's Christian Association* v. *Inhabitants of Poland,* 130 Me. 485, 157 A. 859; *Lincoln* v. *Hall,* 131 Me. 310, 162 A. 267; *Staples* v. *Littlefield,* 132 Me. 91, 167 A. 171; *Throumoulos* v. *First National Bank of Biddeford,* 132 Me. 232, 169 A. 307. The first of these cases calls attention to the change in practice enforced by the adoption of Rule 42 aforesaid, and the last makes it plain that the principle that allegations of error carried in bills of exceptions must be specific to justify review is applied in referred cases to written objections filed under Rule 21. The controlling force of the objections was emphasized in the recent case of *Kennebunk, Kennebunkport and Wells Water District* v. *Maine Turnpike Authority,* 145 Me. 35, 71 A. 2d. 520, where it was said, speaking of a referee's report and objections, that:

"The report * * * must be interpreted in the light of the (this) alleged cause of action; and the reasons assigned as objection thereto must likewise be interpreted as applicable to the report."

Before proceeding to a consideration of the issue defendant purports to raise by his Bill of Exceptions, incorporating all material requisite for its determination, including copies of the report and the objections, and carrying assertion that he is aggrieved by all the rulings and findings in the report "for the reasons specifically stated" in the objections, we must resolve that raised by the plaintiffs, in reliance on such cases as *Heath, Appellant,* 146 Me. 229, 79 A. 2d. 810, and *Sard* v. *Sard,* 147 Me. 46, 83 A. 2d. 286, that said Bill is inadequate to present any issue because, as their brief states:

"Nowhere in the Bill are the issues upon which the defendant claims reversal, set forth. The reasons by which defendant claims error are nowhere

set out in the Bill. There is no allegation that the Justice below found facts without evidence, or made rulings contrary to law."

The references to the "Bill" and to the "Justice" must be intended to relate to the "objections" and the "Referee." The Justice whose ruling accepting the report is under review found no facts, with or without evidence, and made no rulings, contrary to law or otherwise, except the one challenged, the acceptance of the report. The ruling controlling the case was, as heretofore stated, that the southerly line of the lot of land described in the deeds aforesaid ran "due east" from the easterly end of the wall which controls its course for twenty-eight and a half rods from the roadside identified as the place of beginning.

If it could be said that the decision was grounded in factual findings, the position taken by the plaintiffs would be entirely sound. Such findings, made by referees, will not be reviewed on exceptions unless under an allegation that the findings were made without support of evidence, or credible evidence, *Staples* v. *Littlefield,* supra. This principle would preclude consideration of the amount of the damage award carried in the report of the referee if it was not apparent that that amount was determined by the ruling of law locating the property line rather than by determination of the quantity of growth involved or the measure of the value thereof.

Reference to the objections leaves no doubt that the defendant identifies the stated ruling of the referee as the one of which he complains. The phraseology is confusing, perhaps, in its declaration that the referee ruled that the line went "in an easterly direction," which he claims "was error," whereas the ruling was that it ran "due east," but no more so than the plaintiffs' references to the Bill and the Justice in designating the objections and the referee.

The ruling purports to have been made on the authority of *Foster* v. *Foss,* 77 Me. 279, quoting the declaration therein that unless there is some object to direct a course, the words "northerly and easterly" must "be taken to indicate a direction due north or east."

Before referring to that case, and the language quoted from it, several recitals in the report which seem to be intended to support the construction applied to the deeds should be noted. These are that a line projected easterly along the course of the stone wall would not strike the westerly line of the Smith property, a monument fixing the easterly bound of that described in the deeds, but would intersect that line projected southerly ninety-three feet southerly of the southwesterly corner of said property; that if the line follows a course "due east" from the end of the stone wall, it will strike the westerly line of the Smith property "almost at right angles" and cover "almost the shortest possible distance"; and that the word "continuing," as used in the description, "does not eliminate the possibility of some deviation of course" at the point identified. It is said also that in the sixty-eight days intervening between the execution of the two deeds, the plaintiffs and the grantee in the first of them went upon the property and ran a line from the place of beginning identified in it, along the stone wall and on an approximate due east course to the Smith property, which was spotted and painted in the presence of said grantee, and that the plaintiffs thereafter strung a wire along it. The report declares that this line "became the agreed and recognized line" binding upon the parties to the first deed "and their assigns," but the report makes it clear that the defendant had no knowledge of it until he discovered it in the course of his operation when, as the referee declares, he "made no effort to contact plaintiffs * * * but preferred to 'go by his deed' ".

The decision has no support in any of these recitals. Granting that the plaintiffs and the grantee in the first of

the two deeds were bound by the line on which they agreed, their agreement would not bind the grantee in any deed executed later, or the defendant as the successor in title of a subsequent grantee. Granting, also, that the use of the word "continuing" did not "eliminate the possibility of some deviation of course" at the point designated, we cannot fail to recognize that the plaintiffs, having run and marked a line after the delivery of the first deed, could have made the bounds intended to be established by the second one entirely definite by describing that marked line. Assuming the recital in the report that the grantee in the second deed had a financial interest in the growth conveyed by the first has the status of a factual finding, it is not material to the issue because if such interest gave him knowledge that an agreed line had been marked, his knowledge was not the knowledge of the defendant, and nothing was recorded in the Registry of Deeds to carry constructive notice of the fact.

The additional grounds of support mentioned in the report, that a line run due east from the stone wall to the Smith property would strike the latter "almost at right angles" and reach it in "almost the shortest possible distance," are considerations which under the authorities weigh forcibly against the decision instead of in its favor. The principle is undoubted that instruments of conveyance should be construed most strongly against grantors and in favor of grantees. This principle was applied in *Foster* v. *Foss, supra,* as it had been applied earlier in *Field v. Huston,* 21 Me. 69; *Pike* v. *Munroe,* 36 Me. 309, 58 Am. Dec. 751, and *Chapman* v. *Hamblet,* 100 Me. 454, 62 A. 215. It is of general application. Blackstone, Jones' Edition, Volume I, Book II, Page 1225, Sec. 518, 4; 18 C.J. 263, Sec. 219, Par. 9; 26 C.J.S. 361, Sec. 100, f; 16 Am. Jur. 530, Sec. 165.

Decisions rendered since that carried in *Foster* v. *Foss, supra,* show that the statement therein which the referee interpreted as meaning that "easterly" under the circum-

stances of this case must mean "due east" has been modified or changed if it was ever intended that it should be so interpreted. In *Cilley* v. *Limerock Railroad,* 107 Me. 117, 77 A. 776, it is said that:

> "in the matter of identifying descriptions in deeds, the words 'southerly' and 'westerly' are not always used to indicate a direction that is due south or due west."

That language was quoted with approval in *Brown* v. *McCaffrey,* 143 Me. 221, 60 A. 2d. 792, where a point is emphasized which has great force in the present case, the word "easterly" being used twice in describing a single bound in a deed. It was said in *Brown v. McCaffrey, supra,* that the parties "almost without lifting the pen from the deed" wrote the word "westerly" after using the words "westerly line," and that the "westerly" intended must have been the same in both cases.

An additional principle of general application in the construction of deeds, as announced in Blackstone, Jones' Edition, Volume I, Book II, Page 1225, Sec. 517, 3, recognized in this Court in *Keith* v. *Reynolds,* 3 Me. 393, and affirmed in *Jameson* v. *Balmer,* 20 Me. 425, is that the description in a deed should be honored in its entirety "and not merely * disjointed parts of it." In this connection it should be noted that the construction applied by the referee relates to nothing more than the words:

> "and continuing in an easterly direction to land now or formerly owned by Fred O. Smith."

It has already been emphasized that a particular easterly course, and not a general one, identified, when the word "easterly" was first used, by using the stone wall as a monument, which a plan introduced in evidence shows to be east twenty-six degrees and thirty-five minutes south, was disregarded, and it is equally true that the easterly bound of

the land described in the two deeds was disregarded. That bound is described in the words:

"thence northerly along said Smith's westerly line to the Bradbury Road."

The deed under which the plaintiffs acquired title to a larger tract, on the very day they executed the first of the two deeds under which they conveyed growth to defendant's predecessors in title, is in evidence as an exhibit. The land described in the deeds they executed as grantors is a part of that larger tract. In their deed of acquisition, as in the deeds by which they conveyed, the Smith property and the Bradbury Road are monuments controlling the location of a part of the bounds of the property conveyed. In their deed of acquisition the westerly line of the Smith property is a monument for its full length, as are the southwesterly corner thereof and its point of intersection with said Bradbury Road. It is apparent by comparing the descriptions used in plaintiffs' deed of acquisition with that used in their deeds as grantors that the land described in the latter is a part of the larger tract acquired under the former, and that their intention must have been to convey all the growth on all the land they owned westerly of the Smith property and southerly of the Bradbury Road lying easterly of the road identified as the place of beginning in their deeds of conveyance and northerly of a southerly line never located on the face of the earth. The description they used was not appropriate to locate that southerly line as running due east over any part of its course.

The record carries the admission of the defendant that he cut a small amount of timber south of the true southerly line of the land described in the deeds under which he claims, which must be said, as a matter of law, to run from the easterly end of the stone wall identified as the place of beginning to the southwesterly corner of the Smith property, the monument controlling its eastern bound, and will

deviate very slightly from the exact course of said wall. This makes it essential that the amount and value of such timber be determined in appropriate subsequent proceedings, to fix the measure of damages the plaintiffs are entitled to recover in this action.

*Exceptions sustained.*