Wesley A. KINNEY, Jr. and
Gwendolyn H. Kinney

v.

CENTRAL MAINE POWER COMPANY
and Mildred D. and Harry C. Soule.

Supreme Judicial Court of Maine.

June 26, 1979.

southwestern shore of Cousin's Island in Casco Bay. The matter was referred, and after a hearing the referee issued a report finding title to the disputed parcel to be in the defendant, Central Maine Power Company (Company), and not in the plaintiffs, Wesley A. Kinney, Jr. and Gwendolyn H. Kinney (Kinneys). The Superior Court adopted and entered judgment upon the report, and this appeal followed. We sustain the plaintiffs' appeal.

The facts relevant for decision in this case are not seriously disputed. In 1960, the plaintiffs' grantors, Mildred D. and Harry C. Soule,[1] retained an attorney and explained that they wished to make an equitable division of certain land on Spruce Point, Cousin's Island, which was apparently held jointly by three sisters: Mildred D. Soule, Mabel F. Harrigan, and Marion H. Connor. The attorney drew a number of deeds, subsequently executed and delivered by the sisters *inter sese,* which accomplished this purpose. The 1960 division of the Spruce Point property created a common boundary some 700 feet long dividing the land owned by Mildred D. Soule and that owned by Mabel F. Harrigan. The southerly segment of the 1960 Harrigan-Soule boundary is shown on the diagram, prepared by the Court and appended to this opinion, beginning at point C and running northwesterly through point G–1.

In the fall of 1966, two events occurring contemporaneously generated the confusion which resulted in this lawsuit. Just at the time that the Kinneys were negotiating to buy a portion of the Soules' land, Mabel Harrigan had come to the conclusion that her sister, Mildred Soule, "wasn't getting quite [her] share" in the division of the property among the sisters. She decided to rectify the situation by deeding over to Mildred a strip of land roughly 53 feet wide and 700 feet long comprising the westernmost part of her land. The new boundary can be seen on the diagram beginning at point D and running northwesterly through point G. The Soules approached the same

Wilson, Steinfeld, Murrell, Barton & Lane by Steven Juskewitch (orally), Henry Steinfeld, Portland, for plaintiff.

Seward B. Brewster (orally), Central Maine Power Co., Augusta, for Central Maine Power Co.

Before POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

This is a boundary case wherein both parties claim title to a parcel of land on the

---

1. Although the Soules were named as codefendants in the complaint filed by the plaintiffs, they were never served and are not parties to the lawsuit.

attorney and asked him to draw a deed which would carry out Mabel Harrigan's intention. Relying in part on a description provided by a surveyor retained by the Soules, the attorney drew a deed conveying the 53-foot strip and, on October 17, 1966, mailed it to Mabel Harrigan and her husband, Thomas, for their signatures. The Harrigans executed the deed before a New Hampshire notary public on October 27, 1966, and mailed it back to the attorney.

In the meantime, the Kinneys and the Soules had reached an agreement concerning the sale of a portion of the Soules' land on Cousin's Island, and again the Soules turned to the attorney and asked him to draw the appropriate deed and mortgage. As he explained in the course of his testimony at the referee's hearing, the attorney had concluded that the realignment of the Harrigan-Soule division and the Soule-Kinney sale were all part of one transaction and that the Soules intended to convey to the Kinneys the southerly portion of the 53-foot-wide strip newly acquired from the Harrigans.

On November 14, 1966, the Soules and the Kinneys convened in the attorney's office to close the deal. By that time, the attorney had received the executed deed from the Harrigans and had drawn the deed passing title to the land from the Soules to the Kinneys. On the morning of November 14, the Soules executed and delivered their deed to the Kinneys, and the Kinneys executed a mortgage encumbering the land in question and delivered it to the Soules. Both deeds were recorded that morning in the Registry of Deeds, Cumberland County. The Harrigan-Soule deed was recorded one minute earlier than the Soule-Kinney deed.

Six years after this transaction, in November of 1972, the Soules conveyed whatever interest they had in the southerly portion of the 53-foot by 700-foot strip to the Company. The question on appeal is whether, in light of their 1966 deed to the Kinneys, the Soules had any interest in the disputed parcel left to convey to the Company.

The specific controversy arises over the interpretation to be given to the first call in the Soule-Kinney deed. That call provides:

Beginning at an iron pipe [whose location, at point E of the appended diagram, is not disputed]; thence North 77° 38' 50'' East two hundred ninety-one and four hundredths (291.04) feet by other land of the Grantors to an iron pipe set on the southeasterly side of the private road leading to Wharf Road, and in the southwesterly line of land of Mabel F. Harrigan and Thomas P. Harrigan . . . .

The deed also contained the following reference source of title: "Said premises are . . . a portion of the premises conveyed by Mabel F. Harrigan et al to Mildred D. Soule and Harry C. Soule by deed dated October 27, 1966, to be recorded."

The ambiguity created by the first call becomes apparent when one attempts to apply this description to the land in question as it lies on the face of the earth. If one begins at point E and runs in the direction given and for the distance given, one arrives at the iron pipe at point G–1. Continuing 53 feet along the same, or approximately the same,[2] course, one arrives at another iron pipe at point G. The referee explained:

The pipe at Point G–1 lies in the "southwesterly line of land of Mabel F. Harri-

2. From the testimony and exhibits introduced at the hearing, together with the referee's report, it is difficult to tell whether the course in question is the same or whether it deviates slightly to the north. A survey map of the area labeled Defendant's exhibit # 2 and prepared by the defendant in 1971 shows a slight *northerly deviation*. A 1958 survey map labeled Plaintiffs' exhibit # 6 shows a straight line from point E to point G. This map, however, does not show the old pipe at point G–1. The referee found as a fact that point G was located "53 feet further on the *same course*," i. e., course E to G–1. (emphasis supplied).
Our diagram shows the slight angle found on the 1971 map.
We need not decide whether or not the course in fact changes at point G–1 since the change, if any, was slight and since, as we hold *infra*, calls for adjoiners will control over inconsistent courses *and* distances. *See Haynes v. Young*, 36 Me. 557 (1853).

gan and Thomas P. Harrigan" as that line existed prior to the [Harrigan-Soule deed]. . . . The pipe at Point G lies in that line as it existed after the effective date of conveyance by the Harrigans.

The referee further found that the delivery date of the Harrigan-Soule deed was "unknown."

The referee considered the two pipes at points G and G–1 to be "conflicting and competing monuments." "In such a case," he stated, "resort must be had to the course and distance as a controlling factor." He dismissed the reference source of title, which favored the plaintiffs' position, under the familiar rubric that specific descriptions prevail over inconsistent general descriptions, *Perry v. Buswell,* 113 Me. 399, 401, 94 A. 483, 484 (1915), and held in favor of the defendant. The Superior Court entered judgment on the basis of the referee's report, and this appeal followed.

## I

■ Preliminarily, we note that the referee found that the exact date of delivery of the Harrigan deed was "unknown." However that may be, the record amply demonstrates that the Harrigan deed was received by the attorney prior to November 14, 1966, the date when the Soule-Kinney deed changed hands.[3] Indeed, defendant conceded this point at oral argument.

The receipt of the deed by the attorney, who, according to the testimony of Mildred Soule, acted as the Soules' attorney at all stages of the matter,[4] was sufficient to complete the delivery of the Harrigan deed. *Tripp v. McCurdy,* 121 Me. 194, 116 A. 217 (1922); *Hubbard v. Greeley,* 84 Me. 340, 24

A. 799 (1892). Inasmuch as deeds take effect upon delivery, *Hood v. Hood,* Me., 384 A.2d 706, 707 (1978), there can be no question that when the Kinneys and the Soules gathered in the attorney's office on November 14 the 53-foot by 700-foot strip of land on Cousin's Island belonged to the Soules, and the southwesterly boundary of Harrigan land had by that time retreated from (again referring to the diagram) course C to G–1 to course D to G.

That established, the "ambiguity" noted by the referee takes on a new dimension. The referee appears to have concluded that the course and distance given in the first call conflicted only with the reference source of title. As we analyze the case, the course and distance conflict not only with the reference source of title but also with the call for Harrigan's southwestern boundary. Following the familiar rules of deed construction, we are led to a result different from that reached below.

## II

■ Our approach to deed construction cases has remained essentially unchanged for many years. In considering the language of the deed, we ask: What was the intention of the parties? *Sargent v. Coolidge,* Me., 399 A.2d 1333, 1344 (1979); *C Company v. City of Westbrook,* Me., 269 A.2d 307, 309 (1970); *Maker v. Lazell,* 83 Me. 562, 564–65, 22 A. 474, 475 (1891). To ascertain that intention, we take the instrument as a whole, *Herrick v. Hopkins,* 23 Me. 217, 219 (1843), and apply the positive rules of deed construction. *Sargent v. Coolidge, supra* at 1344; *McLellan v. McFadden,* 114 Me. 242, 246–47, 95 A. 1025, 1028 (1915);

---

**3.** The attorney testified that he received the executed deed from the Harrigans sometime prior to the November 14 closing. His testimony is supported by the fact that the Soule-Kinney deed makes specific reference to the Harrigan deed "dated October 27, 1966." This strongly suggests that the attorney had the Harrigan deed in his possession at the time he drew the Soule-Kinney deed since it is extremely unlikely that he could have known the date

of execution of the Harrigan deed other than by examining the document itself.

**4.** The attorney's letter to the Harrigans, which accompanied the deed to be executed, lends further support to this position inasmuch as the author declares that he is acting "[a]t the request of your sister, Mildred D. Soule . . ."

*Bonney v. Morrill,* 52 Me. 252, 255–56 (1863). In doing so, we resolve all ambiguities against the grantor and in favor of the grantee. *Rusha v. Little,* Me., 309 A.2d 867, 870 (1973); *C Company v. City of Westbrook, supra* at 309; *Chapman v. Hamblet,* 100 Me. 454, 459, 62 A. 215, 217 (1905); *Esty v. Baker,* 50 Me. 325, 331 (1862); *Pike v. Monroe,* 36 Me. 309, 316–17 (1853).

 The scope of our review in such cases has also remained constant over the years: "*What* are the boundaries of land conveyed by a deed, is a question of *law*. *Where* the boundaries are, is a question of *fact*." *Abbott v. Abbott,* 51 Me. 575, 581 (1863) (emphasis in original); *Sargent v. Coolidge, supra* at 1339; *McCausland v. York,* 133 Me. 115, 124, 174 A. 383, 387 (1934). This refrain, which seems to have been included in every boundary case passed upon by this Court, serves to emphasize the principle that the construction of a deed is a matter of law, *Sargent v. Coolidge, supra* at 1339, and that therefore "[i]n our review of [the referee's] interpretation of the language of the deed and the inferences which may properly be drawn from stipulated or undisputed facts we do not apply the 'clearly erroneous' rule but instead construe for ourselves the language of the deed." *C Company v. City of Westbrook, supra* at 309.

 As the referee made clear in his report, the instant case presents us with the unusual situation of two artificial monuments, the pipes at points G and G–1, either of which could be the one referred to in the deed. As was pointed out earlier, if the course and distance are followed the pipe at point G–1 answers the description; if, however, the reference to the boundary and the source of title are adhered to, the pipe at point G appears some 53 feet further along on the same, or roughly the same, course.[5] In that posture, the application of the rule that permanent artificial monuments, such as pipes, will control over less definite and

certain descriptions, *Perkins v. Conary,* Me., 295 A.2d 644, 646 (1972), brings us no closer to a solution to the problem.

 We are left, then, with the course and distance on the one hand and the boundary and reference source of title on the other. Which of these is the surer indicator of the parties' intention? In resolving inconsistent calls, priority is given in descending order of control to monuments, courses, distances, and quantity. *Rusha v. Little, supra* at 870; *Perkins v. Conary, supra* at 646. Furthermore, this Court has always accorded an adjoiner the dignity of a monument if, as in this instance, its location at the time the operative deed took effect is ascertainable. *Sargent v. Coolidge, supra* at 1344; *Liebler v. Abbott,* Me., 388 A.2d 520, 521 (1978); *McCausland v. York,* 133 Me. at 123, 174 A. at 387. The synthesis of these two concepts has produced the rule, repeatedly recognized by this Court, holding that calls for adjoiners will control inconsistent calls for courses and distances. *Sargent v. Coolidge, supra* at 1344; *Liebler v. Abbott, supra* at 522; *Hedberg v. Wallingford,* Me., 379 A.2d 126, 130 (1977); *Milliken v. Buswell,* Me., 313 A.2d 111, 116 (1973); *Rusha v. Little, supra* at 870; *Hardison v. Jordan,* 141 Me. 429, 432, 44 A.2d 892, 893 (1945); *Perkins v. Jacobs,* 124 Me. 347, 349, 129 A. 4, 5 (1925); *Chapman v. Hamblet,* 100 Me. at 459, 62 A. at 217; *Bryant v. Railroad Co.,* 79 Me. 312, 313, 9 A. 736 (1887); *Haynes v. Young, supra* note 2 at 562. Applying the rule to the facts of this case, we are led to the conclusion that title to the disputed parcel passed to the Kinneys under the operative deed.

It is certainly true that courts are free to depart from the rules of deed construction where following them would lead to absurd results manifestly inconsistent with the intention of the parties. *See Hamilton v. Foster,* 45 Me. 32, 40 (1858); *Baker v. Roslyn Swim Club,* 206 Pa.Super. 192, 196, 213

---

5. *See* note 2 *supra.*

A.2d 145, 148–49 (1965). However, we discern no manifest inconsistency in this case. No one knew better than the Soules that the boundary of their lot had recently moved some 53 feet to the east. They had discussed the matter of shifting the boundary with the Harrigans and had instructed their attorney to draw a deed for the Harrigans which would accomplish that purpose. On November 14, 1966, they put their signatures on a deed which plainly stated that the Kinneys were to own all of the land up to the Harrigans' lot and further stated that the Kinneys' lot included the parcel so recently acquired by the Soules from the Harrigans. Thus, an examination of the circumstances surrounding the land transfer satisfies us that the relevant rules of deed construction may properly be invoked and applied.

The Company points out that the land in question was surveyed by a professional engineer and that the results of his survey were used by the attorney in drafting the November 14 deed. From this position, the Company argues that the survey must somehow govern our interpretation of the deed. Although we have held that a survey or plan will ordinarily control an inconsistent call in a deed, *Liebler v. Abbott, supra* at 522; *Ilsley v. Kelley,* 113 Me. 497, 501, 94 A. 939, 940 (1915), in both of these cases the survey or plan put forward as controlling was specifically mentioned in the operative deed. As the Company conceded at oral argument and as our reading reveals, there is no language in the Soule-Kinney deed that would have put the Kinneys on notice respecting the existence of a survey or plan. We have little difficulty in holding that a survey commissioned by the grantor and not referred to in the deed cannot be introduced to qualify the deed. The theory behind the *Liebler-Ilsley* rule holds that when a grantee takes under a deed which specifically refers to a certain survey or plan, he is chargeable with notice of what the plan or survey contains. Where the deed fails to make any such reference, the rule is not available.

Because we sustain the appeal on the basis of our interpretation of the deed, we need not consider the plaintiffs' argument to the effect that the referee erroneously admitted parol evidence to qualify the language of the deed.

The entry is:

Appeal sustained.

Judgment set aside.

Remanded to the Superior Court for entry of judgment for the plaintiffs.

McKUSICK, C. J., and WERNICK, J., did not sit.

Appendix to follow.

APPENDIX