LUCY A. BATCHELDER *vs.* CHESTER ROBBINS, and others.

Penobscot.    Opinion February 20, 1901.

*Adverse Possession.    Evidence.*

When title to land is claimed by adverse possession, what facts are sufficient to show open and notorious possession must depend much upon the situation and character of the land, and the uses which are made, or may be made of it. Less proof of a general character is required when it appears that the possession and adverse claim were in fact brought home to the knowledge of the true owner.

*Held;* that the evidence would warrant a jury in finding that Samuel Pratt, in 1862, entered into actual occupation of the disputed lots, and fenced and cultivated them; that they were contiguous to other lots which he owned; that his occupation of the lots in dispute was an actual ouster, a disseizin of the true owner; that he continued in possession until he died in 1863; that the possession was continued by the representatives of his estate and by his heirs of whom the plaintiff is one, by acts of husbandry, until the fences were destroyed in 1865; that since that time the land has lain fallow, except small patches where trespassers have cultivated gardens; that the plaintiff by her agent has frequently and openly been over the lots to look after them, and has on some occasions gone onto them for business purposes directly connected with the lots; that the plaintiff and her predecessors have paid the taxes on these lots since 1861, claiming to own them; and that the defendants' grantor Swan, who is claimed by them to have been the owner from 1861 to 1894, knew of the plaintiff's possession and claim and acquiesced therein. Assuming these facts to be true, the verdict for the plaintiff may be sustained.

*Also, held,* that where little patches of ground were used for gardens by tres-
   passers or squatters, it did not work an interruption of plaintiff's adverse
   possession, under the circumstances of this case.

See *Batchelder* v. *Robbins,* 93 Maine, 579.

On motion by defendant.   Motion overruled.

This was the second trial of the action between these parties,
the first case being reported in 93 Maine, 579.

The facts appear in the opinion.

*P. H. Gillin, E. C. Ryder and C. Scott,* for plaintiff.

It is immaterial whether the color of title is given in one instru-
ment covering the entire tract or in several instruments, each pur-
porting to convey a portion thereof.   The actual possession of
either part so conveyed by separate instruments will give a con-
structive possession to all, if the several parcels are contiguous and
constitute one tract.   1 Am. & Eng. Ency. of Law, (2nd. ed.) p.
865; *Wharton* v. *Bunting,* 73 Ill. 16; *Braxton* v. *Rich,* 47 Fed.
Rep. 148; *Webb* v. *Richardson,* 42 Vt. 465.

When a person dies in possession of land and the possession
devolves upon and is continued by his heirs, their possession is
under color of title.   2 Washburn R. Prop. 493; 1 Am. & Eng.
Ency. of Law, (2nd ed.) p. 850, and cases cited.

A deed by a person acting in an official or representative
capacity as a public officer, an administrator, executor or guardian
gives color of title, even if the grantor had no authority to execute
the conveyance.   1 Am. & Eng. Ency. of Law, (2nd ed.) p. 853;
*Huls* v. *Buntin,* 47 Ill. 396; *Molton* v. *Henderson,* 62 Ala. 426.
It is not necessary that premises should be fenced.   *Ewing* v.
*Burnett,* 11 Pet. (U. S.) 53.

An entry under color of title together with the color of title
itself is generally regarded as an assertion of such claim, and the
color of title, it has been said, may be looked to for the purpose of
determining the character and extent of the claim.   1 Am. &
Eng. Ency. of Law, (2nd ed.) p. 867; *Humbert* v. *Trinity Church,*
24 Wend. (N. Y.) 604; *Costello* v. *Edson,* 44 Minn. 135.

There are certain presumptions which exist in favor of the plain-
tiff; the intent with which one performs an act must be inferred

from the act itself and from the surrounding circumstances. Occupancy, unless proved, is presumed to continue until the contrary is shown. *Currier* v. *Gale*, 9 Allen, 522; *Webb* v. *Richardson*, 42 Vt. 465.

An interruption by an owner to break the continuity of possession must be some decided, feasible, open act inconsistent with the claim of the party setting up ownership by adverse possession. It is not every entry by an owner that will disturb an adverse possession, but to effect this he must assert his claim to the land by acts of ownership. An entry by stealth, or for other purposes than those connected with the right to enter, will not break the continuity of adverse possession in another. *Burrows* v. *Gallup*, 32 Conn. 493; *Fuller* v. *Fletcher*, 44 Fed. Rep. 34; Wood, Limitations, § 270; *Wing* v. *Hall*, 47 Vt. 182; *Altemas* v. *Campbell*, 9 Watts, 28; *Peabody* v. *Hewett*, 52 Maine, 33; *Society, etc.,* v. *Pawlet*, 4 Pet. 480; *Henderson* v. *Griffin*, 5 Pet. 151–158; *Harvey* v. *Tyler*, 2 Wall. (U. S.) 328–349; *Ewing* v. *Burnett*, 11 Pet. 41–53; *Fletcher* v. *Fuller*, 120 U. S. 534–552.

*J. F. Gould*, for defendants.

"The essential use and occupation by one claiming adversely must be of such unquestioned character as will reasonably indicate to the true owner visiting the premises during the statute period that instead of suggesting the probable invasion of a mere occasional trespasser, they unmistakably show an asserted and exclusive appropriation and ownership." *Roberts* v. *Richards*, 84 Maine, 1.

An entry on land under a deed recorded and payment of taxes is no evidence of a disseizin of the true owner unless the person who entered has continued openly to occupy and improve it. *Little* v. *Megquier*, 2 Maine, 176; *Ewing* v. *Bernett*, 1 McLain, 266; *Reed* v. *Field*, 15 Vt. 672.

Going on land and claiming to own it and offering to sell it are circumstances at most showing a claim at that time. A claim is no possession. *Thompson* v. *Knight*, 7 Maine, 439.

An open, exclusive and adverse possession of a tract of land by a demandant is not established by proof that no other person than such demandant occupied it for thirty years, and that he had cut

wood upon it and always fenced portions of it.  *Frye* v. *Gragg*, 35 Maine, 29.

Without actual occupation of some portion of the premises by the grantee under a recorded deed the real owner is not disseized thereby.  *Putnam Free School* v. *Fisher*, 38 Maine, 324.

Mere dilatory and negligent cultivation and occasional acts of working and improving are insufficient.  1 Am. & Eng. Ency. of Law, p. 827.  Mere occasional occupancy, though taxes are paid regularly will not give title.  *Sorber* v. *Willing*, 10 Watts, (Pa.) 141.  The occupation must be so notorious that the owner may be presumed to have knowledge that it is adverse.  *Morse* v. *Williams*, 62 Maine, 445.  If the demandant in a writ of entry shows no title in himself to the real estate demanded he cannot recover, although it should appear that the defendant also had no title.  *Derby* v. *Jones*, 27 Maine, 357.

Pratt had but a tax title to lots 43 to 51.  He did not have a good title to part at least of lots 9 to 20.  Plaintiff testifies she did not know her father ever claimed these lots 43 to 51 in his lifetime and the deed certainly discloses no intention to convey them, and it is a fair inference that only lots 9 to 20 were intended to be included in the deed.

Is the description sufficient to give color of title?  In *Lane* v. *Gould*, 10 Barb. 254, it is held, "that if a deed is devoid of any description and contains no definite and certain boundaries it will not have the effect to extend possession beyond actual occupancy definite, positive, notorious."  Where disseizor enters upon and cultivates a part of a tract of land, he does not thereby hold constructive possession of the whole tract unless his entry was by color of title by specific boundaries to the whole tract.  *Ege* v. *Medlar* 82 Pa. St. 98.

This case is squarely against plaintiff.  In her deed absolutely no boundaries whatever are given.  Simply, " Any and all lands and buildings situated on Treat & Webster Island in Old Town, however the same may be described."  In *Little* v. *Megquier*, 2 Maine, 179, the court seem to hold boundaries must be given. *Props. Ken. Purchase* v. *Laboree*, 2 Greenl. 275.

If a person enters under color of title and by actually occupying a part claiming the whole obtains constructive possession of the entire tract to which his color of title extends, this possession cannot be defeated by a subsequent entry and occupancy of a portion of the same tract, even though under color of title to the whole, where neither claimant shows himself to be in possession of the true title.   1 Am. & Eng. Ency. of Law, p. 870, and cases cited.

SITTING:   WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

SAVAGE, J.   Real action for the recovery of lots forty-three to fifty-one inclusive, on Treat and Webster Island in Old Town, according to plan made by A. S. Howard in 1835.   The defendants deny the plaintiff's title.   The plaintiff claims title to the lots in question, by adverse possession, first by disseizin and open and notorious occupation of the lots themselves under color of title for more than twenty years, by herself and her predecessors in title; and in case of failure of proof of actual occupation, then that she has had constructive possession of these lots by reason of the ownership and actual occupation, during the period of twenty years, of other lots, namely, lots 9 to 20, contiguous to these, all of which forming together, it is claimed, but a single undivided tract of land, the title and right of possession to which descended to her from her father, who was in actual possession of the whole at the time of his death.

The defendants claim that the plaintiff has failed to prove actual occupation in kind or extent sufficient to establish title by adverse possession.   They say that neither the plaintiff nor her predecessors had at any time the actual possession of the lots in controversy, and that if they had such possession it was not uninterrupted nor exclusive for any period of twenty years.   The defendants also say that the plaintiff cannot in any event have had constructive possession and thereby have gained title to these lots by having been in the possession of any other lots, because no other lots on the island owned or occupied by the plaintiff were contiguous to the ones sued

for, and hence, the lots actually occupied and the lots in controversy being separate parcels, that the doctrine of constructive possession does not apply. *Proprs. Kennebec Purchase* v. *Laboree*, 2 Greenl. 275; *Farrar* v. *Eastman*, 10 Maine, 191.

Although it is not necessary to decide the controversy between the parties on the question of constructive possession based upon the contiguity of the lots sued for and others owned and occupied by plaintiff, we think it is expedient to narrate briefly how this controversy has arisen.

A, B, C, D.  Lots 9 to 20 inclusive on Steward plan.

E, F, G, H, I, K, L.  Lots 43 to 56 inclusive on Howard plan super-imposed upon Steward plan, so as to bring the easterly ends of lots 43 to 51 inclusive within the actual limits of the island as shown by Steward plan.

No question is made but that in 1832 a plan of Treat and Webster Island was made by Eber Steward, (or Stewart) and some portion of the island was lotted off, notably, so far as this case is concerned, lots 9 to 20 inclusive. The width of the island, on a line passing through the southerly boundary of lots 14 and 15, as shown by this plan, is 83 rods and 10 links, and this is also the width of

the island as shown by recent actual survey. The Steward plan was recorded in the Registry of Deeds, and is referred to in most of the conveyances and other proceedings relating to lots 9 to 20 which appear in the case. In 1835 a plan was made by A. S. Howard. Lots 9 to 20 inclusive as plotted on the Howard plan are practically coincident with the same lots on the Steward plan; and lots 43 to 56 are plotted to lie easterly of lots 15 to 19, and to extend to the easterly shore of the island. On this plan the lots are plotted in five tiers. In the first tier on the westerly side of the island are lots 9 to 14; in the second, lots 15 to 20; in the third, lots 52 to 56; in the fourth, lots 43 to 47; and in the last, on the easterly side of the island, lots 48 to 51. But by the Howard plan, the island is shown to be about ninety-six and one-fourth rods wide on the southerly line of lots 14 and 15, which is nearly thirteen rods wider than the island shown on the Steward plan, and the same distance wider than the island as it actually exists. Lots 9 to 20 being coincident, or practically so, on both plans, if the remaining three tiers of lots as plotted in the Howard plan be applied to the face of the earth, beginning at the easterly line of lots 15 to 20 and proceeding easterly, about two-thirds of lots 43 to 47 and all of lots 48 to 51 will be crowded into the river. On the other hand, if these lots as plotted be applied to the face of the earth, beginning at the easterly shore of the island and proceeding westerly, about one-third of lots 43 to 47 and all of lots 52 to 56 will lie westerly of the easterly line of lots 15 to 20, and be superimposed upon those lots. In short, there is not room enough on the island for lots 43 to 56 as plotted on the Howard plan. The plan is evidently erroneous. In one aspect of the case, it is important to correct the error if it can be done and give proper effect to the plan. For if the Howard plan be applied beginning at the easterly end of the tier of lots 15 to 20 and running thence to the easterly shore, lots 43 to 51 will not be contiguous to lots 9 to 20. The tier of lots 52 to 56 will intervene. But if the application be made beginning at the easterly shore, and running westerly, then lots 43 to 51 will be contiguous to lots 9 to 20, but lots 52 to 56 will be wiped out of existence. It may be said that so far as the

merits of this case are concerned, lots 43 to 56 exist as lots only on paper. They are not marked on the face of the earth. None of the lots have been sold, no roads have been built, although one is marked on the plan, and no third parties have any rights involved. Were this a controversy between different grantees of these various lots, other considerations would arise; but as this case stands, it is only a question as to how the Howard plan should be applied to the face of the earth, thus to determine where lots 43 to 51 are with reference to lots 9 to 20, contiguous or not. And if the verdict were to depend upon the solution of this problem, we cannot say that the jury would not be warranted in finding that the block of land containing lots 43 to 51 is contiguous to the block containing lots 9 to 20. If they are not contiguous, then, as we have shown, lots 48 to 51 are entirely in the water, as are also the larger part of lots 43 to 47. Yet for more than sixty years all of the parties on both sides of this contested title have recognized all of lots 43 to 51 as existent upon the island. Their payments of taxes show it, their conveyances show it. It is not disputed by counsel in this case. The tax deed, in fact, under which the defendants claim that their predecessor received at least a color of title in 1838, affirms the existence then of all these lots. On the other hand, if lots 43 to 51 are contiguous to lots 9 to 20, there is no space left for lots 52 to 56. They exist only on paper, or as other numbers for parts of lots 15 to 20. But since there is an error somewhere, it is not improbable that the error occurred at this point. For while lots 43 to 51 have been recognized by all parties, these lots 52 to 56 seem to have been entirely disregarded by all, so far as the case shows, until 1888, when the plaintiff began paying taxes upon lots so numbered. There is strong reason therefore, derived from the conduct of the parties, for dropping out lots 52 to 56 rather than lots 43 to 51, and regarding lots 43 to 51 as contiguous to lots 9 to 20.

Now there seems to be no question but that the People's Bank of Roxbury acquired title by levy, in 1842, to lots 9 to 20 (except No. 11, and the omission of that lot is immaterial) and to a lot of land on the island "bounded westerly by lots 15, 16, 17 and 18 on

Eber Stewart's plan " . . . . and "easterly by the Penob-
scot river." This description embraces the disputed territory.
The title of the bank in lots 9 to 20 came by mesne conveyances
to Samuel Pratt, through two channels, in 1861 and 1862. In the
meantime, in 1860, a tax title to lots 43 to 51 had been purchased
by the same Pratt. Upon his death, in 1863, his title in all the
lots, such as it was, descended to his two daughters. The plaintiff
is one of these daughters, and is the grantee of the interest of the
other one. Prior to the levy in favor of the People's Bank, how-
ever, it is shown that the predecessors in title of one Jeremiah
Swan had acquired a tax title to lots 43 to 51, and had taken pos-
session under it, and that Swan continued to hold possession under
this title and adversely to all others, at least until 1860 or 1861.
Swan afterwards, in 1894, conveyed to defendant Robbins.

The decision of the case, however, does not depend upon any
record title. And we have considered the question of the conti-
guity of lots 9 to 20 and those in controversy in this action only as
it may tend to strengthen or weaken the probability that the plain-
tiff and her father before her claimed and occupied the latter lots
adversely. Upon this question it has an obvious bearing. For
reasons unnecessary to state, the jury were instructed that the sole
issue submitted to them was whether the plaintiff had obtained
title to the demanded premises by adverse possession. Upon that
issue, the burden was upon the plaintiff. *Magoon* v. *Davis*, 84
Maine, 178. Under instructions to which no exception was taken,
the jury have decided that issue favorably to the plaintiff. The
burden is now on the defendant to satisfy us that the verdict is
clearly wrong.

To make further analysis of the evidence would not be useful.
Careful consideration leads us to conclude that the evidence would
warrant a jury in finding that Samuel Pratt, in 1862, entered into
actual occupation of the disputed lots and fenced and cultivated
them, that they were contiguous to other lots which he owned;
that his occupation of the lots was an actual ouster, a disseizin of
the true owner; that he continued in possession until he died, in
1863; that the possession was continued by the representatives of

his estate and his heirs, by acts of husbandry, until the fences were destroyed in the winter of 1865; that since that time the land has lain fallow, except small patches where trespassers have cultivated gardens; that the plaintiff by her agent has frequently and openly been over the lots to look after them, and has on some occasions gone onto them for business purposes directly connected with the lots; that the plaintiff and her predecessors have paid the taxes on these lots since 1861, claiming to own them; and that the defendants' grantor, Swan, knew of the plaintiff's possession and claim and acquiesced therein. We think the verdict may be supported upon these facts, assuming them to be true. What facts are sufficient to show open and notorious possession must depend much upon the situation and character of the land, and the uses which are made or may be made of it. Besides, less proof of a general character is required when it appears that the possession and claim were in fact brought home to the knoweldge of the true owner.

We do not forget that all these questions of fact to which we have adverted were stoutly contested by the defendants. They deny that the plaintiff or her father has ever been in any kind of possession of these premises, actual or constructive. They deny that all of the taxes have been paid, as the plaintiff claims. They claim that Swan was in actual occupation of the premises from 1849 to 1874. They say that even if plaintiff or her father ever took possession, that possession has been interrupted, and that no twenty year period of possession has elapsed without interruption.

But these are all questions of pure fact. Witnesses testified to the occupation by Pratt and his daughter, the plaintiff, and that no one else was in possession. Other witnesses testified that Swan and no one else was in possession. It was for the jury to say which class were telling the truth. In one instance relied upon to prove an interruption, where a party was in possession as tenant, the plaintiff claims that he was let in by her agent, while the defendant claims that Swan let him in. Which was right was for the jury to say. As to the occupants of the little patches of ground used for gardens, these may well have been found by the jury either to have

been occupiers by permission of the plaintiff, or that they were mere trespassers, squatters, not disseizors. Entries by such persons did not work an interruption. The testimony was conflicting. If the jury believed that which supported the theory of the plaintiff, they were justified in their finding.

On the whole, we cannot say that the jury erred in their conclusion. The verdict must stand.

*Motion overruled.*