**Laurette Y. RODRIGUE**

v.

**Oscar R. MORIN et al.**

Supreme Judicial Court of Maine.

Sept. 13, 1977.

---

by Pleasant Hill Road. Early in 1972, the Rodrigues placed the tract for sale, employing a real estate broker for that purpose. Defendant, Oscar Morin, having shown some interest in purchasing most of the tract, without the house, the broker prepared a rough sketch of the tract from a city tax map on which he marked off a small parcel in the northeast corner containing the house. His sketch showed 125 feet of frontage for the small parcel on Thomaston Road and showed land of "Newcomb or Lavalee" immediately adjoining the small parcel on the westerly side. The broker and the two men examined the property, and on March 15, 1972, an agreement of sale, to which the broker's rough sketch was attached, was signed by the Rodrigues and by Oscar and Cecile Morin. On May 9, 1972, the Rodrigues executed and delivered a warranty deed to the Morins granting the large tract of land but excepting therefrom the small parcel with the house on it.

The description of the large tract was as follows:

"Beginning at a point at the intersection of the Thomaston Road and the Pleasant Hill Road . . . said point being at the northeast corner of the land hereby conveyed, and on the southerly side of said Thomaston Road and westerly side of said Pleasant Hill Road; thence running westerly from said point along the southerly side of said Thomaston Road one hundred and ninety-six feet to an iron post; thence running southerly two hundred and ninety-two feet to an iron post; thence westerly two hundred and ninety feet to an iron post; thence southwesterly three hundred and eighty feet to a brook and iron post; thence along the southerly course of said brook to property of the Androscoggin and Kennebec Railway; thence easterly along the northerly line of said railroad property and along land of Charles Ward to Pleasant Hill Road; thence northerly along said road to point of beginning."

The excepted parcel was described as follows:

Sanborn, Moreshead, Schade & Dawson by Peter T. Dawson, Augusta, for plaintiff.

Southard, Hunt and Hebert by George H. Hunt, Augusta, for Oscar and Cecile Morin.

Farris & Foley, P. A. by David P. Cullenberg, Gregory J. Farris, Gardiner, for Richard and Rachel Daniel.

Gingras and Speers by Jerrold B. Speers, Augusta, for Gene and Joan Marshall.

Doyle & Fuller by Robert G. Fuller, Jr., Augusta, for First Consumers Savings.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

Joseph and Laurette Rodrigue owned in Augusta an irregularly-shaped tract of land, on which was their house, about nineteen acres in area, bounded on the northerly side by Thomaston Road (also known as Eastern Avenue) and on the easterly side

"Commencing at a point which marks the intersection of Eastern Avenue, so-called, and the Pleasant Hill Road; thence running in a southerly direction along the westerly side of the Pleasant Hill Road 250 feet, more or less; thence turning and running in a westerly direction 275 feet, more or less; thence turning and running in a northerly direction along the easterly boundary of property now or formerly of Lavallee 250 feet, more or less, to the southerly boundary of said Eastern Avenue; thence turning and running in an easterly direction 125 feet, more or less, along the southerly boundary of Eastern Avenue to the point of beginning."

The point of beginning at the northeast corner in each deed is the same monument, namely, the intersection of the southerly boundary of Thomaston Road (Eastern Avenue) with the westerly boundary of Pleasant Hill Road. The first call for the large tract gives 196 feet frontage on Thomaston Road without any reference to anyone else's boundary; the third call for the excepted parcel describes its westerly boundary as running along the easterly boundary of Lavallee's property to Eastern Avenue (Thomaston Road). The last call for the excepted parcel describes the distance along Eastern Avenue to the point of beginning as 125 feet, more or less. It is the discrepancy of 71 feet of frontage on Thomaston Road that is the primary cause of the dispute. The Morins claim this frontage; Mrs. Rodrigue claims that the entire frontage on Thomaston Road was within the excepted parcel.

The matter became more complicated by later conveyances. On October 31, 1972, the Rodrigues conveyed to their son, Lionel, by warranty deed all the land they owned in the area, describing it particularly but excepting the property transferred earlier to the Morins. Though Lionel held the legal title, later events showed that he held it for the benefit of his parents.

After Joseph Rodrigue died, his widow, Laurette, the plaintiff in this action, decided to sell the excepted parcel with the house on it. Lionel reconveyed to her, using the same description that his parents had used in their conveyance to him. Then, without having any understanding with the Morins, Mrs. Rodrigue employed a surveyor to prepare a map of the corner parcel by projecting the calls in the Rodrigue-Morin deed. The surveyor made no effort to locate by survey the easterly line of the Lavallee property on the face of the earth so that the distance could be ascertained from the point where that property line intersects Thomaston Road to the northeast corner of the parcel. The map the surveyor produced showed a southerly boundary of Mrs. Rodrigue's parcel 436.85 feet long, instead of the 275 feet called for in the description of the reserved parcel in the Rodrigue-Morin deed, and it showed a westerly boundary of 367.19 feet as contrasted with the 250 feet specified in that description. However, the map did show the southerly boundary as running along the northerly line of Morins' land and most of the westerly boundary as running along the land of one Richard Newcomb.

On July 3, 1973, Mrs. Rodrigue sold and conveyed what purported to be her northeast corner lot by warranty deed to Richard and Rachel Daniel, using a description based on her survey. If only the courses and distances called for in that deed were to be used, the parcel would have encroached on the Morins' land, but the southerly boundary of the parcel was stated to be "along the northerly line of land now or formerly of Oscar R. Morin."

The Daniels spent much time and money renovating the house on the parcel, and Mr. Daniel, who bought, restored, and sold houses for a living, was beginning to negotiate for its resale when he received a notice from the Morins' lawyer that he was not to trespass on the 71-foot strip fronting on Thomaston Road immediately to the east of the Newcomb property. Rather than contest the Morins' claim, the Daniels decided when they sold the renovated house to convey only what they were sure they owned. Accordingly, when they sold and conveyed to Gene and Joan Marshall on

May 23, 1974, their warranty deed described the corner parcel by a description conveying only 125 feet of frontage on Thomaston Road and with a southerly boundary of 275 feet along the northerly line of Morins' property. Testimony taken before the referee tended to show that the Daniels would have received considerably more for the lot with 196 feet of frontage on Thomaston Road than the Marshalls paid them for 125.

Litigation began with an action in district court for damages for breach of warranty by the Daniels against Mrs. Rodrigue. Mrs. Rodrigue thereupon began an action in Superior Court against the Morins, seeking a judgment declaratory of her rights under her and her husband's 1972 deed to the Morins, removal of cloud on title, and reformation. She prayed specifically for reformation of the reservation in the Rodrigue-Morin deed to accord with her 1973 survey and with the description of the corner parcel in her deed to the Daniels. The Daniels, the Marshalls, and a bank that had taken a mortgage from the Marshalls were joined as parties, though the Marshalls denied any direct concern with the outcome. Although Mrs. Rodrigue had parted with all title to the original tract, her standing as plaintiff seems not to have been challenged in this litigation, presumably on the ground that her possible liability as a warrantor sufficed for the purpose.

By consent, the case was tried before a referee, who found no evidence of mutual mistake in the Rodrigue-Morin transaction. Though the referee did not expressly say so, it was implicit in that finding that the plaintiff was not entitled to reformation. However, because the complaint also asked for a declaration of rights, the referee properly went on to consider the effect of the several transactions on plaintiff's rights and duties with respect to the other parties to the litigation.

Having ruled out the possibility of mutual mistake, the referee addressed himself to the construction of the descriptions of the large tract and small parcel in the deed from the Rodrigues to the Morins. There was no evidence that after the conveyance the parties ever agreed on the location of a line to be treated as the westerly boundary of the excepted parcel. Citing *Hardison v. Jordan*, 142 Me. 279, 50 A.2d 447 (1946) and *Perkins v. Conary*, 295 A.2d 644 (Me.1972), the referee applied the recognized principle that, normally, in case of conflict, discoverable monuments referred to in a description prevail over courses and distances. Moreover, he took the view that where a call in a deed is made in terms of an already existing adjoining tract, the existing tract will be regarded as establishing a boundary and will be treated as a monument to which any distances in the description must yield. *Rusha v. Little*, 309 A.2d 867 (Me.1973).

The referee reached his resolution of the litigation by applying the foregoing rules and principles. He treated three sides of the reserved parcel as being controlled by monuments, the northerly side being the southerly boundary of Thomaston Road, the easterly side being the westerly boundary of Pleasant Hill Road, and the westerly boundary being the easterly line of the Lavallee or Newcomb tract. The referee then determined the southerly boundary, using the following language in his report:

> "The southerly bound is the only one which must be determined by data other than monuments. But here we are aided by the fact that plaintiff has caused an iron pin to be set in the ground on the westerly side of Pleasant Hill Road 189.05 feet measured from the street intersection. This distance is less than the numerical footage contained in the call, '250 feet, more or less.' It appears to have been accepted as a corner by all parties and is not in dispute here. It is apparent that the south bound must be a line projected from the iron pin thus accepted as a corner to the Lavallee line. Since that point of intersection is not agreed upon and is not controlled by a monument, it is necessary and proper to revert to the distances given in the deed. I find that a point on the Lavallee line measured 250 feet from the northerly corner of this property on the southerly side of Eastern Avenue will fairly reflect the

intention of the parties as evidenced by their deed and will work no prejudice to the defendant Morin. A line projected from the iron pin on the Pleasant Hill Road to said point on the Lavallee line, although more rather than less than the footage given in the call of, '275 feet, more or less,' gives controlling influence to every monument adopted by the parties and fairly reflects their evident intention as set forth in their deed. They may have been mistaken as to the actual distance along Eastern Avenue between the Lavallee line and the Pleasant Hill Road but that mistake, if it existed, is of secondary importance since there could be no mistaking the fact that under the deed defendant Morin was granted no frontage on Eastern Avenue between those two terminal points—and this is the area in dispute."

■ The appellants object to the use of the Lavallee or Newcomb line as a monument, complaining that there was no testimony to show that a Lavallee or a Newcomb had in fact owned any land to the west of the Rodrigues' tract before the 1972 conveyance or, if so, what its boundaries were. The reference to "Newcomb or Lavallee" on the broker's rough sketch annexed to the Rodrigue-Morin contract of March 15, 1972, does not amount to proof, appellants argue, that "the easterly boundary of property now or formerly of Lavallee" is a true monument.

In our opinion, appellants' objection is sufficiently answered by the last sentence of the passage quoted above from the referee's report. If one thing is clear from the language of the fourth call in the description of the reserved parcel it is that the northerly side is to run from the point where the easterly edge of adjoining property on the west intersects the southerly boundary of Thomaston Road. The uncertain reference to "125 feet, more or less" as the length of the north side does not itself rebut that conclusion, and the testimony at the trial fell far short of establishing that the reference to the Lavallee line as the westerly boundary of the excepted parcel

was the result of some mistake. Indeed, the distance calls in the description of the reserved parcel in the 1972 deed were highly inaccurate and unreliable. For example, the first call in the description of the excepted parcel was for 250 feet of frontage on Pleasant Hill Road, whereas Mrs. Rodrigue, the Morins, and the Daniels all agreed that the actual frontage was really intended to be 189.05 feet, with an iron post not mentioned in the 1972 deed marking the southern terminus. The later deed from the Daniels to the Marshalls showed the correct frontage on Pleasant Hill Road, reflecting that understanding. A conceded substantial discrepancy in the first call of the description of the excepted parcel, especially where no survey had been made before conveyance, tends to support the conclusion that distance calls in the Rodrigue-Morin deed are not at all reliable as guides to intention.

We think that the referee did not err in locating the southern boundary of the Rodrigues' reserved parcel along a line drawn easterly from the post 189.05 feet southerly on Pleasant Hill Road to a point on the Lavallee line 250 feet south on that line from Thomaston Road. He had found as a fact that the distance from the stake on Pleasant Hill Road to the Lavallee line was greater than 275 feet, so that it was impossible to make the southerly boundary 275 feet. In fact, he was under no necessity to arrive at a southern boundary of that length in view of the roughly approximate nature of other distance calls in the description of the excepted parcel. Having concluded that the westerly boundary lay along the Lavallee line, he grounded his location of the southern boundary on his conclusion as to what the intention of the parties to the deed must have been considering the desirability of a fairly regularly shaped corner lot. In so doing, of course, he rejected Mrs. Rodrigue's claim, based on her post-conveyance survey, to a triangular area lying between the southerly boundary as found by the referee and the southerly boundary shown on the map her surveyor prepared in 1973.

■ With respect to the Daniels' counterclaim for breach of warranty and misrepresentation, the referee decided that Mrs. Rodrigue had not breached the warranty in her deed to the Daniels because the southerly line in her deed was described as running along the northerly line of the Morins' land. On the ground that the Morins' land was a monument, the referee held that it prevailed over calls for courses and distances in the deed. In short, Mrs. Rodrigue's deed to the Daniels expressed the intention not to encroach at all on the Morins' land, with the result that there was no breach of warranty. With that result we must agree.

■ During the negotiation with the Daniels before conveyance, the referee found that Mrs. Rodrigue had shown them her survey map and had represented to them that the boundaries appearing on it were the true boundaries of the parcel to be conveyed. That representation was untrue with respect to the southern boundary, for she did not own the triangular area extending to the southwest corner of the parcel as she claimed it. The referee found that she made the representation to the Daniels without any reasonably based belief that it was true and in reckless disregard of consequences. However, he found no evidence that the Daniels had relied on Mrs. Rodrigue's representation as far as the southern boundary of the parcel was concerned. The Daniels showed on trial how important it was to them that the 71-foot frontage on Thomaston Road be part of the corner parcel, but nothing in their testimony indicated that the exact location of the southerly line made any difference to them at the time they purchased the parcel—or later, for that matter. In fact, the Daniels acquiesced in the agreement of all parties that the southern boundary would run west from a stake 189.05 feet south of the intersection of Thomaston and Pleasant Hill Roads even though Mrs. Rodrigue's deed called for that boundary to start at a point 250 feet south of the intersection. The record thus supports the referee's finding that the Daniels did not rely on Mrs. Rodrigue's representation as to the location of the southern boundary of the parcel. Since we believe the referee was correct in holding that in other respects her representations to the Daniels about the boundaries of her lot turned out to be accurate, their counterclaim for damages for misrepresentation must fail. Out of the lot the Daniels purchased from Mrs. Rodrigue, they are left owning whatever they did not convey to the Marshalls.

The referee recommended judgment declaring the rights of the parties in accordance with the findings and conclusions indicated above, and the presiding justice of the Superior Court accepted the referee's report and granted judgment as recommended. We affirm the judgment for the reasons stated.

The entry is:

Appeal denied.

All Justices concur.