Chester J. CLEWLEY, Philip A. Small, Vera E. Small and William T. Meucci

v.

McTIGUE FARMS, INC., Erwin P. McTigue and Robert T. McTigue.

Supreme Judicial Court of Maine.

Aug. 18, 1978.

Twitchell, Gray & Linscott by Pamela D. Chute (orally) Frederick J. Badger, Jr., Bangor, for Chester J. Clewley.

Vafiades, Brountas & Kominsky by Eugene C. Coughlin, III, Bangor (orally), for Philip A. Small and Vera E. Small.

Stearns, Finnegan & Needham, P.A. by Kenneth L. Jordan, Jr., Bangor, for William T. Meucci.

Gross, Minsky, Mogul & Singal, P.A. by Norman Minsky (orally), David C. King, Bangor, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

GODFREY, Justice.

This case involves a dispute over the title to a triangular parcel of land, roughly three acres in area, southeasterly of and adjoining the right of way of the Bangor and Aroostook Railroad where it crosses outer Union Street in Bangor. The parcel was once a part of the forty-acre Sloat Farm, most of which lay on the other side of the railroad right of way. In the early 1940's, the Sloats gave permission to Mrs. Sloat's sister and brother-in-law, Herbert and Mary Davies, to build a house on the triangular parcel. After the Davieses built their house, the Sloats entered into a contract, dated June 2, 1949, with Grace McTigue and her son, Robert McTigue, to sell the Sloat Farm excepting "about 3 acres with Building thereon lying Easterly or southerly of the B. and A. Railroad Tracks." The Sloats conveyed the triangular parcel to the Davieses by a deed that was dated May 18, 1950, but not recorded until October 16, 1951. The Sloats conveyed the whole farm to Grace McTigue by a deed dated June 1, 1951, and recorded July 20, 1951. That deed did not reserve or except the Davieses' parcel but merely recited that the premises were those described in the 1949 contract between the Sloats and the McTigues. By virtue of the recording act, 33 M.R.S.A. § 201, if Mrs. McTigue was not on notice of the prior conveyance to the Davieses when she purchased the Sloat Farm, her legal title to the triangular parcel became superior to theirs in 1951.

Appellants assert title as successors to Grace McTigue; the appellees' claim of title is derived, through successive conveyances and transfers of possession, from the Davieses. After a trial without jury in Superior Court, the presiding justice rendered judgment adjudging title to be in the appellees and dismissing appellants' claim. The trial court set forth three alternative grounds for its decision, each of which appellants say was erroneous. We conclude

that the judgment should be upheld on the basis of the trial court's determination that appellees have established title by adverse possession for over twenty years. With respect to that issue, the court's findings of fact were supported by credible evidence and were not clearly erroneous, and we find no error in the court's application of the law to those facts.

Evidence that the court was justified in believing indicated that Eugene Brown and his family rented the property in question from the Davieses from the spring of 1951 until January of 1954, when the house the Davieses had built burned to the ground. Mr. Davies collected fire insurance proceeds after the fire. One James E. Wiles purchased the parcel by warranty deed from Mr. Davies in September of 1954. Wiles testified that he had intended to clean up the remains of the charred building but never got around to it. He said he walked about on the property on several occasions in order to determine where a house might be built. By deed executed on October 1, 1955, Wiles sold the property to William Meucci, one of the appellees here. As part of the selling price, Mr. Meucci agreed to pay the taxes that had accrued on the property while Wiles owned it. In August of 1955, apparently in expectation of the purchase, Mr. Meucci began to stockpile heavy construction equipment and materials on the property. He subdivided the property into three lots and on one of the lots constructed a home. He hauled fill to the lots and marked trees and cut bushes to indicate the lot lines. He continued to stockpile materials and store heavy equipment on the other two parcels until the lots were sold.

Mr. Meucci testified that he sold the lot with the new house to Mr. John Brown, who lived on the property until shortly before appellees Small purchased it. There was a time when Mr. Brown rented the house to another family. In 1962, appellees Small purchased the lot with the house from Brown. The Smalls have lived in the house since then. In 1965, Mr. Small acquired a second lot out of the parcel from Mr. Meucci, cleared away the remains of building materials, and planted a garden.

In March, 1973, Mr. Meucci conveyed the third lot to appellee Clewley. Several months before the conveyance, Clewley had built a foundation on this third lot with Meucci's permission. In March of 1973, he moved a ranch-style house from another place to the foundation he had built. Shortly before the move, one of the appellants told Mr. Clewley he should not move his house to the foundation because appellants owned the property. There was no evidence that the McTigues asserted any claim to the property before 1973. At all times since 1950, the appellees and their predecessors claimed title under deeds describing the actual premises. Based on the foregoing evidence, the trial court found that appellees had established title by adverse possession. *See* 14 M.R.S.A. § 801; *Inhabitants of School District No. 4 v. Benson*, 31 Me. 381 (1850).

The appellants challenge the Superior Court's finding that the conduct of appellees and their predecessors with respect to the property had all the necessary characteristics of adverse possession. In particular, they assert that the trial justice should have found, as a matter of law, that the continuity of possession was broken during the interval from January 11, 1954, when the house burned down while it was occupied by Eugene Brown as a tenant of the Davieses, to the summer of 1955, when Mr. Meucci began stockpiling materials on the parcel in anticipation of purchasing the land from Mr. Wiles.

We cannot say as a matter of law that, in the circumstances, the absence of activity on the parcel for that period of time amounted to abandonment of possession or withdrawal of claim of ownership on the part of the Davieses or their successor, James Wiles. It is not necessary that the adverse claimant be on the premises at all times. *Batchelder v. Robbins*, 95 Me. 59, 49 A. 210 (1901). The nature of the premises, the uses for which they are suitable, the reason for any cessation of occupation, and the situation of the adverse claimant in his relationship to the premises are all relevant

in determining whether the adverse possession has been abandoned. 3 American Law of Property § 15.9 at 807 (A. J. Casner ed. 1952). The question is essentially one of fact for the fact finder. *Batchelder v. Robbins, supra; Schwartz v. Kuhn*, 10 Me. 274 (1833).

With respect to the other requisite elements of adverse possession, the trial court's findings are also not clearly erroneous and cannot be set aside. Rule 52(a), M.R.Civ.P.

It becomes unnecessary to consider the alternative grounds on which the trial court adjudged title to be in the appellees.

The entry is:

Appeal denied.

Judgment affirmed.