Frank I. HOWE, Jr. et ux.

v.

Anthony J. NATALE et ux.

v.

Dean A. FALES, Jr. et ux.

Supreme Judicial Court of Maine.

Argued Sept. 21, 1981.

Decided Nov. 3, 1982.

---

Waterhouse, Carroll & Cyr, Peter L. Edmands (orally), Biddeford, for plaintiffs.

Rysman & Turner, Warren M. Turner (orally), Yarmouth, for defendants and third-party plaintiffs Natale.

Walker, Bradford & Hull, Yarmouth, John D. Bradford (orally), Biddeford, for defendants.

Before McKUSICK, C.J., GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

NICHOLS, Justice.

The Defendants and Third-Party Plaintiffs, Anthony Natale and Mary-Yvon Natale, appeal from a judgment of the Superior Court, York County, which accepted the report of a referee in this controversy over a boundary. The disputed property, located on Ocean Avenue in Kennebunkport, is a gore approximately three feet by 100 feet between a lot owned by the Natales and a lot owned by the Plaintiffs, Frank Howe and Elsie Howe. The Third-Party Defendants, Dean Fales and Martha Fales, were the Natales' predecessors in title. The Superior Court found that the Howes had established title to the disputed gore by adverse possession, that they were entitled to damages of $900 under 14 M.R.S.A. §§ 7552 and 7555 (1980), and that the Fales were not liable to the Natales under their warranty deed.

We affirm the judgment of the Superior Court.

The Howes acquired their house and lot by warranty deed in 1946. Their grantor showed them the four corners of the lot at that time, and the disputed gore was within the area indicated to them by their grantor. The owner of the adjacent lot, now owned by the Natales, disagreed orally with these boundaries, but took no further action. The Howes relied on the indicated boundaries rather than their deed, mowing to the far edge of the disputed area and later planting flowers and bushes.

The Natales acquired the lot adjacent to the Howes in 1972 by warranty deed. The Natales later removed a split-rail fence which had been built by the Fales in 1963 somewhat inside what they believed to be their property line with the Howes. In 1973 or 1974 the Natale lot was surveyed, and Howe objected to the surveyor's indications that the disputed gore was within the Natale property. In 1974 the Natales erected a wire fence along their claimed line. By 1975 part of a fence erected by the Howes on a line at right angles to the disputed boundary had been cut down, and flowers and ornamental shrubs which the Howes had planted were dug up or destroyed. The Natales put gravel over the gore and allowed automobiles to park there.

The Superior Court accepted the report of the referee who heard the parties' testimony and reviewed their evidence. There were two reports by the referee in this case, because the first report failed to resolve the Howes' claim under 14 M.R.S.A. § 7555 [1], the Natales' counterclaim, and the Natales' third-party complaint against the Fales. In his first report, the referee found, and the Superior Court agreed, that the Howes had established title to the disputed property by adverse possession which ripened in 1966, while the Fales were still owners of the adjacent lot.

■ When we review the recommendations of a referee on appeal, our duty is simply to determine whether the findings of the referee were supported by any evidence of probative value. M.R.Civ.P. 53(e)(2). The Superior Court's adoption of the referee's findings of fact must be upheld if these findings are supported by credible evidence and not clearly erroneous. *Clewley v. McTigue Farms, Inc.,* Me., 389 A.2d 849, 851 (1978).

■ Under Maine law "[w]hether specific possessory acts are sufficient to establish title through adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances." *McMullen v. Dowley,* Me., 418 A.2d 1147, 1154 (1980). Possession is established when the evidence shows an actual use and enjoyment of the property which is in kind and degree the same as the use and enjoyment to be expected of the average owner of such property. *Id.* at 1152. The land at issue here was a three foot wide strip of grass which the Howes mowed regularly after they purchased their lot in 1946 and on which the Howes later planted flowers and shrubs.

■ There was credible evidence to support the referee's conclusion that this use of the property was that to be expected of the average owner of such property. The Howes' house was very close to the disputed strip of lawn; there were few if any other imaginable uses to which it could have been put by them. Mr. Howe testified that he intended to claim the gore, whether it was included in his deed or not. We cannot say that the Superior Court's findings on this issue were clearly erroneous.

■ The second report of the referee recommended, and the Superior Court awarded, treble damages of $750 under 14 M.R.S.A. § 7552 [2] and $150 under 14 M.R.S.A. § 7555 to the Howes. In his first report,

1. § 7555 provides:
Whoever enters on any grass land, dooryard, ornamental grounds, orchard or garden and cuts down, defaces, destroys or takes therefrom, without permission of the owner, any grass, hay, fruit, vegetable or ornamental tree or shrub is liable in a civil action to the party injured in treble damages.

2. This statute provided:
Whoever cuts down, destroys, injures or carries away any ornamental or fruit tree, timber, wood, underwood, stones, gravel, ore, goods or property of any kind from land not his own, without license of the owner, or injures or throws down any fences, bars or gates, or leaves such gates open, or breaks glass in any building is liable in damages to the owner in a civil action. If such an act or such acts are committed willfully or knowingly, the defendant is liable to the owner in double [treble] damages [and, in addition, for the cost of any professional services necessary for the determination of damages, for attorney's fees, and for court costs].
14 M.R.S.A. § 7552 (1964) [word in brackets added by 1977 amendment].

also accepted by the Superior Court, the referee had recommended an award of $750 in damages under § 7552, finding that "the evidence does not support double or triple damages." The issue of damages under § 7552 was not included in the order of reference of the Superior Court remanding the case to the referee after the first report was filed. The referee therefore was without jurisdiction to reconsider that issue. M.R.Civ.P. 53(c). The Natales challenge both awards on this appeal.

■ The $150 award under § 7555 must stand. It was an issue specifically included in the second order of reference. The statute simply provides treble damages for entry into a dooryard and destruction of fruit or ornamental trees or shrubs. There is probative evidence in the record to support a finding that such entry and destruction occurred.

■ The award under § 7552 raises an additional problem. When the Howes brought this action in 1975, the statute only provided for double damages. 14 M.R.S.A. § 7552 (1964). The statute was amended in 1977 to allow treble damages. Trial in this case took place in 1979. The law of damages is a matter of substance which is fixed when the cause of action accrues. *Batchelder v. Tweedie*, Me., 294 A.2d 443, 444 (1972). Therefore, the earlier language of § 7552 controls in this case. *See Nyzio v. Vaillancourt*, Me., 382 A.2d 856 (1978).

■ However, the Natales did not object to the award on this basis. Even if the language of the second report could be said to control under these circumstances, an issue which we need not decide, the Natales have waived their right to review on this issue. A reasonable view of the evidence in the record, including all justifiable inferences to be drawn therefrom, taken in the light most favorable to the Howes, supports a finding that the Natales acted willfully or knowingly as required under § 7552. *Grant v. Warren Brothers Company*, Me., 405 A.2d 213, 216 (1979). The amount of the award, whether single or treble damages, does not appear to be unreasonable.

The referee found, in effect, that the warranty deed from the Fales to the Natales neither conveyed nor purported to convey the disputed gore. The Superior Court therefore entered judgment for the Fales on the Natales' third-party complaint for breach of warranty. The referee had reasoned that the use of the Howe property as a boundary in the Fales to Natale deed meant that the deed, executed in 1972, conveyed only to the line established by adverse possession in 1966, some three feet inside the line those parties may have contemplated at the time they were negotiating the transfer.

The relevant portion of the deed describes the property conveyed as follows:

BEGINNING at an iron pipe driven into the ground on the Easterly side of said Ocean Avenue at a point which is 59 feet Southerly of the Southwesterly corner of a parcel of land conveyed by Enid G. Ripley to Lenabel C. Fales . . . thence Southerly by said Ocean Avenue 105 feet to an iron pipe driven into the ground at the Northwesterly corner of land of Elsie M. Howe; thence Easterly by said Howe land on a line which is at right angles with the last described line, (100.18) one hundred and eighteen hundredths feet to an iron pipe driven into the ground . . .

The factual question posed before the referee, then, was where on the face of the earth was that "iron pipe driven into the ground at the Northwesterly corner of land of Elsie M. Howe." In resolving that question the fact finder had assistance from the witness, Howe, who testified that the second iron pipe referred to in this section of the deed did not exist in 1946 or 1966. A pin was placed along that line by surveyors hired by Natale in 1974. Howe also testified that an iron pipe, near the line which he claims, had disappeared some time after 1946. A surveyor hired by Natale testified that a pin had been set at this location in 1963, but Fales was unable to find the pin later that year.

■ The referee correctly interpreted the Howe boundary line cited in the deed as a monument. *Kinney v. Central Maine Pow-*

er Company, Me., 403 A.2d 346 (1979); Bryant v. Maine Central Railroad Company, 79 Me. 312, 9 A. 736 (1887). A boundary line is a controlling monument, Liebler v. Abbott, Me., 388 A.2d 520, 521 (1978), having priority over courses and distances or quantity descriptions in a deed. Mayer v. Fuller, Me., 248 A.2d 140 (1968). "One who accepts a deed describing his land in terms of an adjoining tract is bound by the prior tract as a boundary and a monument to which any distances in the deed must yield." Rusha v. Little, Me., 309 A.2d 867, 870 (1973).

That the boundary line was a monument is clear. The location of that boundary line is a question of fact, and this Court will therefore defer to the conclusion of the fact finder unless it is clearly erroneous. Milliken v. Buswell, Me., 313 A.2d 111, 115 (1973). This might be a case of conflicting monuments, if it were not for the fact that the critical iron pipe appears not to have been in existence in 1972, at the time of the Fales to Natale conveyance.

The reference to the second pipe in the description in the Fales' deed is of no consequence in locating the boundaries of the Natale property because that pipe was found no longer to exist and its past location was found not to be determinable.

Both Fales and Natale testified that it was their intent that the disputed gore of land be conveyed by the deed in question. But the fact that at least one of the pipes or pins referred to by the deed did not exist when the deed was executed means that the Howe boundary line was the only existing monument at the south side of the property conveyed.

When the land is described as bounded on one side by the land of a named person, the true boundary line of such person's land must be taken as the boundary line, and not the line as it was understood and agreed to exist at the time of the execution of the deed, if there is a variance between such two lines.

F. Clark, Law of Surveying and Boundaries § 490 (3d ed. 1959).[3] The referee determined that the true boundary was located three feet north of the distance called for in the Natales' deed because of the Howes' adverse possession. The fact that the Howe line was the governing boundary is a question of law; the location of that line, as established by the referee, is a question of fact. McCausland v. York, 133 Me. 115, 174 A. 383 (1934). The referee's finding must therefore stand unless clearly erroneous. Milliken v. Buswell, supra.

 "If an existing line of an adjoining tract is mentioned in a deed as a boundary, it is the true line which is such boundary." Murray v. Munsey, 120 Me. 148, 150, 113 A. 36, 37 (1921). The true line in this case is the one established by adverse possession in 1966. Occupation which amounts to disseisin can "control the express language of the deed and change the location of the true line." Hardison v. Jordan, 141 Me. 429, 434, 44 A.2d 892, 894 (1945). Therefore, even though the Fales thought that they had conveyed title to the disputed gore by their warranty deed, they did not and could not do so. Because the Howe boundary line in the deed prevails over the course and distance calls to the south line of the property they conveyed, the deed did not truly purport to convey the disputed gore. There is thus no breach of the covenant in the warranty deed. See Rodrigue v. Morin, Me., 377 A.2d 476 (1977).

The entry, therefore, will be:

Appeal denied.

Judgment affirmed.

McKUSICK, C.J., GODFREY, J., and DUFRESNE, A.R.J., concurring.

CARTER, Justice, with whom VIOLETTE and WATHEN, Justices, join, concurring in part and dissenting in part.

I agree with the majority opinion with respect to the claim for adverse possession

---

**3.** See generally 1 Patton on Titles § 153 (2d ed. 1957).

and the claim for damages under Title 14. I cannot, however, join in the majority's conclusion that the Superior Court properly entered judgment for the Fales on the Natales' third-party complaint for breach of warranty.

In simple terms, the covenants that the grantor is "lawfully seized" and has a "right to convey" represent assurances that the grantor is capable of conveying that quantity and quality of estate which he purports to convey. *See* 6A R. Powell & P. Rohan, *The Law of Real Property* ¶¶ 895–97 (1981). Thus, the linchpin of any action for breach of warranty is the establishment that the grantor held less of an estate either in terms of the quality of his title or its physical extent than he purported to convey by his deed.

The majority, in sustaining the judgment of the Superior Court that Fales did not breach his warranty, appears to engage in a two-step analysis. First, the majority agrees with the reasoning of the referee that boundary lines are monuments and that monuments control over other calls in the deed. Then, finding that the referee's location of the boundary line as the line established by adverse possession was not clearly erroneous, the majority agrees with the trial justice's conclusion that the Fales "were not liable to the Natales under their warranty deed." At 1199. But the majority's analysis refuses any consideration to what the deed *purported* to convey. That is the operative question in deciding if a warranty of title has been breached by the conveyancing effect of the deed.

The majority is correct in its assertion that a boundary line or adjoinder noted in a deed is usually to be treated as a monument. Moreover, such monuments typically take priority over other calls in a deed. My point of departure with the majority opinion is with respect to the dignity to be accorded this monument given the circumstances of this case and the treatment of the referee's finding as a question of fact.

It is well-established in Maine law that in the interpretation and construction of deeds, the intent of the parties controls, but in an action at law, the intent that appears from the face of the deed governs. *Sargent v. Coolidge,* Me., 399 A.2d 1333, 1344 (1979). Moreover, in interpreting the deed, all ambiguities are resolved against the grantor and in favor of the grantee. *Kinney v. Central Maine Power Co.,* Me., 403 A.2d 346, 350 (1979). It is equally well-established that, "*What* are the boundaries of land conveyed by a deed, is a question of *law.* *Where* the boundaries are, is a question of *fact."* *Id.* (quoting *Abbott v. Abbott,* 51 Me. 575, 581 (1863) (emphasis in original)). "The question of how the boundaries of the land are to be described, through an interpretation of the language of the deed, is one of law." *Bailey v. Look,* Me., 432 A.2d 1271, 1273–74 (1981). Consequently, "[i]n our review of [the referee's] interpretation of the language of the deed and the inferences which may be properly drawn from stipulated or undisputed facts, we do not apply the 'clearly erroneous' rule but instead construe for ourselves the language of the deed." *Kinney,* 403 A.2d at 350 (quoting *C. Company v. City of Westbrook,* Me., 269 A.2d 307, 309 (1970)). In light of the above, the initial inquiry in the instant case must be whether, as a *legal matter,* the referee correctly interpreted *the meaning of the language of the deed* to mean that boundary line in existence *after* the resolution of the adverse possession action.

Here, the language of the deed conveying the two parcels of land from the Fales to the Natales states in pertinent part:

BEGINNING at an iron pipe driven into the ground on the Easterly side of said Ocean Avenue at a point which is 59 feet Southerly of the Southwesterly corner of a parcel of land conveyed to Enid G. Ripley to Lenabel C. Fales . . . thence Southerly by said Ocean Avenue *105 feet* to an iron pipe driven into the ground at the Northwesterly corner of land to Elsie M. Howe; thence Easterly *by said Howe land* on a line which is at *right angles* with the last described line, (100.18) one hundred and eighteen hundredths feet to an iron pipe driven into the ground. . . .

ALSO, one other certain lot or parcel of land situated on the Easterly side of said Ocean Avenue, adjoining Northerly the above described parcel and bounded and described as follows:

BEGINNING at an iron pipe driven into the ground on the Easterly side of said Ocean Avenue at the Southwesterly corner of a ten (10) foot strip of land this date conveyed by these Grantors to Lenabel C. Fales and Dean A. Fales, Jr. . . . thence Southerly by said Ocean Avenue *forty-nine* (49) feet to the Northwesterly corner of the parcel of land above described . . . .

. . . .

Both of the above parcels are part of the same premises conveyed to these Grantors by Libania Barbara MacMaster et al, Executor of the last Will and Testament of George MacLachlan MacMaster late of said Kennebunkport deceased testate by their deed dated July 1, 1963 . . . . (Emphasis added.) Under this description, four calls are presented, namely, (1) the distance of 105 and 49 feet totaling a distance of 154 feet along Ocean Avenue, (2) the artificial monument of an iron pipe, (3) the monument of adjoinder, and (4) the right angle measurement. As noted by the majority, the iron pipe noted in the above description is no longer extant. Thus, the referee in this case was presented with three calls to ascertain the intent of the parties as gleaned from the description in the deed.

In the instant case, the referee determined that the Howes had acquired through adverse possession a triangular piece of land.[1] Given this result, the referee was faced with a choice between two boundary lines in determining what the parties *intended* by the words "by said Howe land" used in the deed. The referee

could have chosen, as he did, the boundary line ascertained after the resolution of the adverse possession claim—the post-adverse possession line. Alternatively, he could have opted for the line that existed before the Howes' claim had ripened into legal title—the pre-adverse possession line. Deferring to the hierarchy of calls in a deed, the referee interpreted the deed *as referring to* the post-adverse possession line.

The majority justifies the referee's choice of the boundary as located by him in resolving the adverse possession claim as the point of reference by which the breach of warranty claim is to be decided, by two singular propositions. First, it is asserted that the referee *found* "that the warranty deed from the Fales to the Natales *neither* conveyed *nor purported to convey* the disputed gore." at 1201 (emphasis added). This assertion is, in my view, a manifest misconstruction of the referee's decision. He found "that the Defendants Natale have failed by a fair preponderance of the evidence to prove their Counterclaim against Plaintiffs Howe." The proof of this proposition, put forth by the referee, was that the location of the line, *as determined by him in resolving the adverse possession claim between the Howes and the Natales,* "is the southerly line of the Third-Party Plaintiffs Natale, *therefore,* Third-Party Plaintiffs Natale failed to prove breach of warranty in the deed of conveyance to them from Third-Party Defendants Fales." (Emphasis added.) It is clear from this language that the referee's rationale was that the boundary *as established by adverse possession* was a monument and that it controlled in reading the deed from Fales to Natale. He apparently did not even consider the agreed-upon intent of the parties to the deed at the time it was delivered. He made no *finding* whatever as to what the deed *purported* to convey and *certainly*

[1]. The referee's report of June 25, 1980, described the parcel acquired by adverse possession as follows:

Beginning at point "C" on the Gerber Plan (Plaintiffs' exhibit 5) which point is on the easterly side of Ocean Avenue and running north on the easterly side of said Avenue

20°5′16″ east 3.67 feet to a spruce tree about 6.75′ in circumference; thence running southerly 77°15′28″ east 99.77 feet to point I (an iron bolt driven in the ground); thence running north 79°20′16″ west 131 feet to point "C" the point of beginning on Ocean Avenue.

made no finding, either in fact or effectually, *that the deed did not purport to convey the gore.*

Second, the majority dismisses the call to the iron pipe in the Fales' deed to Natale as *"of no consequence"* because it was "found no longer to exist and its past location was found not to be determinable." at 1202 (emphasis added). It is the inexplicable singularity of focus upon the actual location of the line between Fales and Natale which, in my opinion, leads the majority into palpable error. The *actual location* of the line is only secondarily in question in resolving the warranty claim; its resolution is pertinent only to a determination of whether the warranty given was breached. The critical issue posed in this case centers, rather, on the scope of the warranty created by the deed; that is, what did the grantor purport to convey to which he warranted that he had good title.

As the majority notes, "both Fales and Natale testified that it was their intent that the disputed gore of land be conveyed by the deed in question." at 1202. That intent goes to the primary issue. The testimony of the parties to the deed as to their mutually understood intent on that point is dispositive of the issue of the scope of the warranty created by the deed. To say that such a mutually understood intent is "of no consequence" because of the disappearance of a marker that would exemplify in precise terms their understanding of the location of the line to which the grantor intended to convey, flies in the face of logic, law, and the actual fact of the undisputed state of mind of the parties to the deed.

This Court cannot by its *fiat* "unring" the bell of intent that tolled in the minds of the parties when the deed was given. That intent is the controlling fact in resolving the warranty claim and it cannot be washed away with mere words.

The fundamental error is clearly displayed when the majority says "[t]herefore, even though the Fales *thought* that they had conveyed title to the disputed gore *by their warranty deed,* they did not *and could not do so."* at 1202 (emphasis add-

ed). I submit that because it was "their warranty deed" by which they conveyed, they did not only "think" that they conveyed the disputed gore; they represented that they had good title and *warranted* that they conveyed such to the Natales. Because they did not have such title and "could not" convey such title, they must, necessarily, *have breached the warranty.* Their understanding as to the precise location of the boundary does not determine what they purported to convey; the words of the deed, as construed by their undisputed intent to convey the gore, resolves that issue.

It is a clearly established corollary proposition to the general rule that monuments control over competing courses and distances that the construction given to a deed containing competing calls should be one that most nearly harmonizes all the calls in the grant. *Universal Home Builders Inc. v. Farmer,* 375 S.W.2d 737, 742 (Tex.Civ.App. 1964); *see also Board of Commissioners of Grand County v. Baumberger,* Colo.App., 513 P.2d 1075, 1077 (1973) (calls cannot be disregarded if they can be harmonized in reasonable manner); *Perkins v. Conary,* Me., 295 A.2d 644, 646–47 (1972) (courses and distances if relevant must be given their due evidentiary value in determining proper identity of monument); *Tyler v. Fickett,* 73 Me. 410, 417 (1882) (measurement of lines should not be disregarded in determining identity of monuments); *Herrick v. Hopkins,* 23 Me. 217, 219 (1843) (every call in description of premises must be answered if possible); *Gauley Coal Land Co. v. O'Dell,* 144 W.Va. 730, 735, 110 S.E.2d 833, 837 (1959) (if possible, calls cannot be disregarded). Courts are free to depart from rules of deed construction where following them would lead to absurd results. *Kinney,* 403 A.2d at 350. Here, the acquisition of title through adverse possession results in a shortening of Natale's property line along Ocean Avenue from that distance called for by the words used in the deed and in an alteration of the angle between the Howe/Natale property line and Ocean Avenue. Thus, the effect of the referee's

adoption of the post-adverse possession line is the disregard of the distance and angle measurements specified in the deed. Adoption of the pre-adverse possession line, however, provides a construction that harmonizes these calls in the deed.

I believe that the uncertainty of the location of the Howe boundary line because of the *then* undetermined adverse possession right at the time of conveyance militates against according the post-adverse possession line the full dignity of a monument. The reason for giving monuments controlling effect in our rules of construction is that they more probably reflect the intent of the parties with respect to the extent of the grant. *See Edmonds v. Becker,* Me., 434 A.2d 1012, 1013 (1981).

> It is true that the general rule is that course and distance must give way to a call for a natural boundary, and that the line of an adjacent tract, if well known and established, is a natural boundary. But this is because such natural boundary is usually considered more certain, being at a fixed and definite place, if "established and known," and therefore unchangeable and more likely to be the true call in the deed than course and distance which may, by inadvertence, be incorrectly written down. The reason of the law is the life thereof. "Ratione cessante, cessat et lex." The rule of construction which ordinarily prefers the call for the boundary of another tract to course and distance is based upon the reason that the former is usually more certain than the latter, and applies only when the boundary of the other tract is established and well known.

*Wilson Lumber Co. v. Hutton,* 152 N.C. 537, 540, 68 S.E. 2, 4 (1910). Here, the post-adverse possession line was not clearly established at the time Natale took title to the property. Thus, the use of this monument as determining the intent of the parties should not be given the all-controlling effect accorded to it by the referee, especially when he was faced with a breach of warranty claim rather than a claim of title.

Finally, the rationale for strict adherence to the rules of construction creating the hierarchy of calls is that "the security of real estate titles depends upon a strict adherence to these rules of construction." *Sargent,* 399 A.2d at 1344 (quoting *McLellan v. McFadden,* 114 Me. 242, 247, 95 A. 1025, 1028 (1915)). The instant matter, however, only raises the issue of breach of warranty between the parties to a conveyance. It does not involve or question "the certainty, precision and permanency of muniments of title." *Perkins,* 295 A.2d at 646. Given the claim raised in this case, I cannot justify the inflexible application of a rule of construction in a situation where the reason for the rule does not exist.

In light of the above, I would find that the proper construction of the calls in the deed requires the adoption of the pre-adverse possession line as the boundary intended by the description used by the parties in the deed. At the very least, the emergence of an adverse possession claim and the inconsistency of the calls following the establishment of this claim creates an ambiguity in the deed, read as of the time of its delivery, which permits the admission of extrinsic evidence as an aid to construction. *See Leighton v. Leighton,* Me., 329 A.2d 164, 167 (1974). The actual intent of the parties contemplated a conveyance to the pre-adverse possession line. Given the conflict created within the description of the deed by the choice of the post-adverse possession line, the uncertainty of the post-adverse possession line as a monument until the adverse possession claim was resolved by legal proceedings, the absence of a reason for strictly applying the rules of construction, the known intent of the parties, and the nature of the claim before us, I would conclude that the referee erred in concluding that the deed should be read as if Howe intended to convey only to the post-adverse possession line.[2] I would re-

**2.** The instant case presents a significantly different fact pattern than found in two recent warranty of title decisions of this Court, *Tib-* *betts v. Pelotte,* Me., 427 A.2d 956 (1981) and *Rodrique v. Morin,* Me., 377 A.2d 476 (1977).

mand this case for further proceedings in the action for breach of warranty consistent with this conclusion.

In *Tibbetts*, the parties intended to convey a parcel of 60 acres. The deed, however, only conveyed a parcel of 35 acres. The landowners adjacent to the land in question successfully established, after the conveyance, their title to the other 25 acres. Because the description used in the deed conveyed, in fact, exactly what the grantee was left with after the adjoining owner's suit—a 35 acre parcel, the Court found that no breach of warranty occurred. The instant matter is distinguishable from *Tibbetts* because, as I view the deed description, it conveys more land than Natale was left with after resolution of the adverse possession claim. Under the majority's result, however, Natale may still possess a remedy. As noted in *Tibbetts*, the deed could be reformed and a breach of warranty action could then be brought.

In *Rodrique*, this Court, finding that a conveyance describing a boundary as running along the land of another was indicative of the grantor's intent not to encroach upon the land of another, concluded, therefore, that no breach of warranty occurred. In that case, however, no adverse possession claim created any uncertainty with respect to the boundary line. Rather, it was the inconsistency of the adjoinder description with the distance calls in both the prior and the disputed conveyance (both of which were inconsistent with each other and with fact) that produced the dispute.